# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| ARMSTRONG FLOORING, INC., *et al.*, | Case No. 22-10426 (MFW) |
| Debtors.[1] | (Joint Administration Pending) |

### PATHLIGHT CAPITAL LP'S PRELIMINARY OBJECTION TO THE DEBTORS' DIP MOTION AND CRITICAL VENDOR MOTION

Pathlight Capital LP, in its capacities as administrative agent, collateral agent, Australian security trustee, and lender under the Term Loan Agreement ("**Pathlight**"), files this preliminary objection to the (a) *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Priming Financing and to Use Cash Collateral; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 17] (the "**DIP Motion**") and (b) *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Critical Vendors and (B) Foreign Vendors, (II) Authorizing Provisional Payment to Certain Contract Counterparties, and (III) Granting Related Relief* [Docket No. 9] (the "**Critical Vendor Motion**"),[2] and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Armstrong Flooring, Inc. (3305); AFI Licensing LLC (3265); Armstrong Flooring Latin America, Inc. (2943); and Armstrong Flooring Canada Ltd. (N/A). The address of the Debtors' corporate headquarters is PO Box 10068, 1770 Hempstead Road, Lancaster, PA 17065.

[2] Capitalized terms used herein but not defined shall have the meanings given to them in the DIP Motion and the Critical Vendor Motion, as applicable.

**PRELIMINARY STATEMENT**

1. The Debtors seek the extraordinary relief of a non-consensual, $30 million DIP loan that would prime Pathlight's prepetition Term Loan liens, without providing adequate protection and without meeting their heavy burden of proof under 11 U.S.C. 364(d). Discovery will show that the Debtors' assertion that Pathlight has a sufficient equity cushion — notwithstanding the Debtors' continually deteriorating performance and inability to close a going-concern sale prepetition — is based on deficient and overly optimistic valuations and financial analyses. Indeed, in December 2021, Pathlight advanced the Debtors *$35 million* and provided other significant financial accommodations to keep the company afloat for *five months* so it could pursue a going-concern sale. That process led to *nothing*. Now, the Debtors would like the Court to believe that it will be different this time. In doing so, the Debtors ask the Court to place all of the risk on Pathlight, with its adequate protection solely dependent on the outcome of a speculative sale process that already failed once before. The Debtors' contention that Pathlight will receive additional adequate protection in the form of replacement liens is likewise illusory. If the priming DIP liens result in Pathlight becoming undersecured, the replacement liens behind the DIP liens would be worthless. The Debtors have not and cannot meet their burden on adequate protection.

2. Equally troubling is how – and how quickly – the Debtors intend to use the DIP loan proceeds. Two-thirds (up to $20 million) of the proposed DIP loan would be used an "interim" basis. Through the Critical Vendor Motion, the Debtors request authorization to pay *$14 million* of prepetition "critical" vendor claims, none of which they identify. This includes payments to unnamed "Foreign Vendors," who the Debtors contend must be paid simply because they "do not speak English as their native language and may not be comfortable with, understand, or feel themselves bound by, orders of a U.S. bankruptcy court." Additionally, according to the proposed DIP budget, the Debtors' will incur and/or pay *$8.8 million* in professional fees over the next

2

seven weeks. That means that **76%** of the priming DIP loan proceeds will be used for unsecured and unidentified critical vendor claims and professional fees. The Debtors argue that the priming DIP is necessary to achieve a value-maximizing going concern sale, but their planned use of proceeds shows otherwise. The Debtors are, in essence, liquidating their assets through an expedited 50-day sale process. It simply cannot be the case that the success of that strategy depends on using priming proceeds to pay critical vendors $14 million and estate professionals $8.8 million. Even if the critical vendor payments were "critical" — and the Debtors offer no hard evidence to show that — there is no basis to subordinate Pathlight's liens to pay these unsecured claims ahead of Pathlight and the other Term Loan Lenders. Pathlight's first-priority liens encumber non-income producing assets (including equipment, real estate, motor vehicles, and IP), the value of which are not dependent on a going concern sale.

3.      The notion that the Debtors need a $30 million priming DIP is further undermined by their payment of ***$4.8 million*** in retention bonuses to senior executives shortly before the bankruptcy filing. According to the Debtors' First Day Declaration (at ¶¶ 122, 125), senior executives received $3.4 million in retention bonuses in February 2022 and $1.4 million on May 5, 2022 — only four days before the petition date. The DIP loan essentially replenishes money that the Debtors' paid to these senior executives, to the detriment of the Term Loan Lenders, by layering $4.8 million of debt on top of the Term Loan Facility to fund these prepetition payments to insiders. By paying the bonuses before the petition date, the Debtors also conveniently avoided all scrutiny under 11 U.S.C. § 503(c). If there were truly an equity cushion in these cases, and if retaining the Debtors' named executives were critical to the sales process, the Debtors could have delayed the payments and sought approval to pay the generous retention bonuses *after* the petition date, subject to review and approval by the Court. Instead, the Debtors' executives – knowing full

well that the Debtors were about to file their bankruptcy petitions – took the money first without asking for authorization to do so.

4.      Pathlight and the Term Loan Lenders have done everything they reasonably could do to support the Debtors' effort to run a successful sale process resulting in full payment of the prepetition secured obligations. As noted above, Pathlight advanced $35 million to the Debtors in December 2021 for that very purpose. To free up additional liquidity, Pathlight allowed the Debtors to PIK interest and capitalize fees and expenses. Pathlight and the Debtors' prepetition ABL lenders proposed a consensual, non-priming DIP package that would satisfy the Debtors' existing funding needs to effectuate their desired going-concern sale. But the Debtors rejected that proposal and opted instead for an inferior, priming DIP that will assuredly result in significant, unnecessary, and costly litigation.

5.      For these reasons and others, Pathlight objects to the DIP Motion and Critical Vendor Motion, and respectfully requests that they be denied.

**BACKGROUND**

6.      On May 9, 2022, the Debtors commenced these cases by filing petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7.      In addition to the Term Loan Facility, the Debtors also have a separate ABL Credit Facility, for which Bank of America, N.A. is administrative agent. Pathlight's Term Loan is secured by a first-priority lien on the Debtors' Term Loan Priority Collateral, which includes, among other things, equipment, real estate, motor vehicles, IP, certain equity interests in foreign, non-Debtor affiliates, and other related property and proceeds. The Term Loan Lenders also hold a second-priority lien on the Debtors' ABL Priority Collateral, which includes, without limitation,

accounts receivable, payment intangibles, inventory, deposit accounts, investment property, commercial tort claims, and all cash (other than proceeds of the Term Loan Priority Collateral). As of the petition date, the total amount due and owing to Pathlight under the Term Loan was $98,016,882.76.

**OBJECTION**

8. When a debtor proposes to prime a secured creditor's prepetition liens in collateral, section 364(d) of Bankruptcy Code requires the debtor to provide the secured creditor with adequate protection of its interests in that collateral. *See* 11 U.S.C. § 364(d); *see Resolution Tr. Corp. v. Swedeland Dev. Grp. (In re Swedeland Dev. Grp.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("A debtor has the burden to establish that the holder of the lien to be subordinated has adequate protection."). "[P]riming is extraordinary relief requiring a strong showing that the loan to be subordinated is adequately protected." *LTAP U.S. LLLP*, 2011 WL 671761, at *3 (Bankr. D. Del. Feb. 18, 2011)**.** Priming is "to be invoked only in the most compelling and extraordinary circumstances," and "[i]t is available only . . . when credit is unavailable elsewhere." *In re Dunckle Assocs., Inc.*, 19 B.R. 481, 485 (Bankr. E.D. Pa. 1982). "[T]he purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy." *Swedeland*, 16 F.3d at 564 (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)). Adequate protection "should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing." *Id.*

9. The Debtors cannot meet their heavy burden of showing that the Term Loan Lenders' liens will be adequately protected. The Debtors have not proven the existence of an equity cushion — which is their burden to prove — and cannot rely on illusory replacement liens. Priming liens under section 364(d) are appropriate only in compelling and extraordinary

5

circumstances, and this is not one of them, particularly when $27.6 million out of the $30 million in priming DIP proceeds will be used to pay "critical" vendor claims, professional fees, and reimbursement to the Debtors for prepetition bonuses paid to insiders on the eve of the bankruptcy filing. Unless and until the Debtors provide the Term Loan Lenders with adequate protection, the DIP Motion and Critical Vendor Motion (which dictates how almost half of the DIP proceeds will be used) should be denied.

## **RESERVATION OF RIGHTS**

10.     Pathlight reserves all rights to supplement and/or amend this preliminary objection prior to or at any interim or final hearing on the DIP Motion and/or the Critical Vendor Motion. In addition, nothing set forth in this preliminary objection should be deemed a waiver of any objections or arguments that Pathlight may have with respect to the DIP Motion, the Critical Vendor Motion, or any other motions filed by the Debtors. Finally, while Pathlight desires to be paid in full in cash, it expressly reserves its right to credit bid its secured claim at any auction of the Debtors' assets.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

Based on the foregoing, Pathlight respectfully requests that the Court (a) deny the DIP Motion, (b) deny the Critical Vendor Motion, and (c) grant such other and further relief as it deems just and proper.

May 10, 2022

Respectfully submitted,

GREENBERG TRAURIG, LLP

/s/ *Dennis A. Meloro*
Anthony W. Clark (DE Bar No. 2051)
Dennis A. Meloro (DE Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Telephone: 302-661-7000
Facsimile: 302-661-7360
Email:   anthony.clark@gtlaw.com
         melorod@gtlaw.com

and

Jeffrey M. Wolf
Joseph P. Davis
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, MA 02110
Telephone:  617-310-6000
Facsimile:  617-310-6001
Email:  wolfje@gtlaw.com
        davisjo@gtlaw.com

and

Brian E. Greer
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400
Email:  greerb@gtlaw.com

*Attorneys for Pathlight Capital LP, as administrative agent, collateral agent, Australian security trustee, and lender under the Term Loan Agreement*