**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ARMSTRONG FLOORING, INC., *et al.*[1] | Case No. 22-10426 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: June 21, 2023, 2:00 p.m. (ET)**<br>**Objection Deadline: June 7, 2023 at 4:00 p.m. (ET)** |

**FINAL FEE APPLICATION OF RYAN, LLC**

| | |
|---|---|
| **Name of Applicant:** | Ryan, LLC |
| **Authorized to Provide Professional Services to:** | Debtors, as tax consultant |
| **Date of Retention:** | June 1, 2022, ECF No. 252 |
| **Period for which compensation and reimbursement is sought:** | Invoices dated 09/21/22 - 04/26/23 |
| **Amount of Compensation sought as actual, reasonable and necessary:** | $198,360.85 |
| **Amount of Expense Reimbursement sought as actual, reasonable and necessary:** | $5,000.00 |

This is an _____ interim __X__ final application.

Ryan is not seeking fees for preparing and filing this application.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their respective tax identification numbers, are as follows: Armstrong Flooring, Inc. (3305); AFI Licensing LLC (3265); Armstrong Flooring Latin America, Inc. (2943); and Armstrong Flooring Canada Ltd. (N/A). The address of the Debtors' corporate headquarters is c/o Riveron Management Services, LLC, 265 Franklin Street, Suite 1004, Boston, MA 02110.  The cases were converted from chapter 11 on April 17, 2023 [ECF No. 1352].

Ryan, LLC ("Ryan"), as tax consultant to Armstrong Flooring, Inc. ("Armstrong"), and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby submits its final application (the "Application") for allowance of compensation for professional services rendered and reimbursement of out-of-pocket expenses incurred for the period of September 21, 2022, through April 26, 2023.[2] By this Application, Ryan seeks allowance of professional fees and expenses in the amount of $203,360.85. In support of same, Ryan respectfully states as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter. 28 U.S.C. §§ 157 and 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested here are 28 U.S.C. §§ 330 and 331, Federal Rule of Bankruptcy Procedure 2016, and Local Bankruptcy Rule 2016-2, as well as the *Order Authorizing the Employment and Payment of Professionals Used in the Ordinary Course of Business* [ECF No. 252] (the "OCP Order").[3]

### BACKGROUND

4.      Ryan is a leading global tax services firm that provides a wide variety of tax advisory and consulting services.

5.      As relevant to this proceeding, Armstrong retained Ryan to provide property tax and transaction tax advisory and consulting services, including among others, transaction tax compliance services, to minimize tax liabilities of the Debtors through proprietary methods for

---

[2] As Ryan explains further below, a portion of the fees due to Ryan have not yet been billed due to the arrangement between the Debtors and Ryan.
[3] In Exhibit 1 of the OCP Order, Ryan is identified as "Ryan and Company."

determining available allowances, deductions, exclusions, and exemptions, and to ensure compliance.

6.      Specifically, on or about August 25, 2016, Armstrong retained Ryan as a tax professional through a Property Tax Professional Services Agreement ("Agreement 1"). Armstrong also executed a Multistate Sales and Use Tax Review letter agreement on February 18, 2019, amended on June 12, 2020 ("Agreement 2"). Lastly, Armstrong executed a Professional Services Agreement with Ryan Tax Compliance Services, LLC on November 25, 2019 ("Agreement 3"), which covered specific transaction tax compliance and tax payment processing, and related services, for particular tax returns. Together, Agreements 1, 2, and 3 are the "Agreements."

7.      In the Agreements, Ryan and the Debtors agreed that Ryan's compensation would be calculated using proprietary formulas based on the amount of tax refunds, credits, and reductions secured by Ryan through its services.

8.      The Debtors filed for Chapter 11 bankruptcy protection on May 8, 2022 ("Petition Date"). Prior to the Petition Date, as part of Ryan's longstanding relationship with Debtors, Ryan performed services for the Debtors and secured refunds, tax credits, and/or tax reductions for the Debtors.

9.      The OCP Order provides that Ryan shall be engaged "as of the Petition Date" as an ordinary course professional pursuant to the terms of the OCP Order [ECF No. 252]. Ryan confirmed its disinterestedness by declarations filed on June 24, 2022 [ECF No. 432] and August 25, 2022 [ECF No. 740]. In the August 2022 declaration, Ryan waived its prepetition claims against the Debtors [ECF No. 740, ¶ 10].

10.     On or about April 17, 2023, the Court entered the *Order Converting Debtors'*

*Chapter 11 Cases to Cases under Chapter 7 of the Bankruptcy Code* [ECF No. 1352] ("Conversion

Order"), which directed the Office of the United States Trustee to appoint a Chapter 7 trustee to

administer Debtors' estates (the "Estate").

### RYAN'S SERVICES

11.     Since the Petition Date, Ryan has performed multistate tax compliance services,

state sales and use tax review and offsetting of audit liabilities in California, and property tax

appeals work in Illinois for the Debtors as their retained professional (the "Services").

12.     Through the Services, Ryan secured approximately $360,316.15 for the Debtors in

the form of tax refunds, credits, and reductions.

13.     In its declarations, Ryan explained how its fees for Debtors would be calculated,

which included "Performance-Fee rates [of] 25% to 40% of total tax savings or reduction" and

"Fixed-Fee and Hourly-Fee billing rates, subject to change" from "$74-$500 per hour." [ECF No.

740, ¶ 6].

14.     Ryan has received $35,549.00 in payments since the Petition Date from the

Debtors.

15.     Ryan currently holds $20.00 in an account used exclusively to manage and pay the

Debtors' tax obligations under the agreements between Debtors and Ryan.

16.     Ryan holds no retainer or reserve for purposes of paying its professional fees for

the Services.

17.     The total amount sought to be allowed for the Services and expenses is

$203,360.85, of which $167,911.85 remains unpaid.

18.     Ryan invoiced the Debtors for the Services in September and November 2022. Copies of the invoices are attached as **Exhibit A** to this application.  A portion of the fees are unbilled, as explained below.[4]

19.     Invoice Nos. 491731, 502501, and 502539 have been billed to Debtors but remain unpaid.

20.     Invoice No. 491731 reflects the amount due for Ryan's multistate tax compliance services to the Debtors through May 31, 2022, which is $3,540.21.  Ex. A at 1.

21.     Invoice No. 502501 reflects the amount due for the Debtors' subscription to and use of an exclusive software provided by Ryan called PinPoint, which is $5,000.  Ex. A at 2.

22.     Invoice No. 502539 reflects the amount due for Ryan's California sales and use tax review services rendered to Armstrong Flooring, Inc., which is $18,640.01.

23.     The total amount due on Invoice Nos. 491731, 502501, and 502539 is $27,180.22. Accordingly, Ryan seeks an order authorizing the Chapter 7 Trustee and/or the Debtors' Estate to pay Ryan the amounts due on those invoices.

24.     Ryan also has recognized unbilled fees owed by Debtors under Agreement 1 in the amount of $140,731.63.  Pursuant to Agreement 1, Ryan "bills" Debtors a percentage of the refunds or credits Ryan secures for the Debtors from the taxing authority as Ryan's fee for the Services.  Ryan does not bill that percentage until the refund or credit is received.

25.     Ryan's unbilled fees were incurred as a result of extended work Ryan completed for Armstrong related to property taxes assessed against a plant operated by Armstrong in Kankakee, Illinois.  Ryan's efforts to obtain refunds for the Debtors related to the plant in Kankakee date back to tax year 2011.  Ryan's Services included analyzing the value of the property

---

[4]  The invoices satisfied by the $35,549.00 received by Ryan since the Petition Date have not been included in Exhibit A hereto, but are available on request.

on an annual basis, securing appraisals, negotiating with the assessor to secure a lower taxable value for the property, attending preliminary hearings, and tending to issues in litigation related to the valuation of the real property.  At times, as required and authorized, Ryan secured outside counsel to assist in obtaining refunds for the Debtors.

26.    As a result of Ryan's efforts and its longstanding, favorable relationships with the applicable Illinois taxing authorities, Ryan has been successful in obtaining over $1 million in refunds for the Debtors.  As relevant here, Ryan has secured two (yet-unpaid) refunds in the amounts of $146,013.37 and $139,742.76, respectively (the "Refunds").  Ryan has worked diligently with the applicable Illinois taxing authorities and its outside counsel to secure the Refunds for Armstrong.  Ryan anticipates and believes the Refunds from the Illinois taxing authorities are forthcoming in the near future (likely within the next six months) to the Estate.

27.    Because the Refunds have not yet been issued, Ryan has not yet billed the Debtors for these Services.[5]  Based on the agreed-upon fee arrangement and the anticipated refunds, Ryan will be entitled to a fee for these services in the amount of $140,731.63.[6]  Because this case has been converted to Chapter 7 and the Court set a bar date for professional fee applications, Ryan submits this application for an order authorizing the Chapter 7 Trustee and/or the Debtors' Estate

---

[5] Under Agreement 3, Ryan does not bill (or invoice) the Debtors until a refund is received.  Because the refunds in issue have not yet been received, Ryan has not prepared an invoice for the $140,731.63 that will be due.  Ryan is ready, willing, and able to prepare a "mock" invoice should the Court or any parties in interest so request.  Ryan books these potential fee payments as unbilled revenues.

[6] Armstrong Flooring, Inc. executed an assignment of a portion of the refunds sufficient to pay Ryan's fees for the Services generating the Refunds.  Specifically, Agreement 3 provides Armstrong "hereby assigns, transfers, and conveys to Ryan the rights to that portion of any Tax Savings equal to Ryan's Performance Based Fee" related to the refunds.  This language constitutes an enforceable present assignment of a future right in the refunds.  *See Wolters Village Management Co. v. Merchants and Planters Nat'l Bank of* Sherman, 223 F.2d 793, 798 (5th Cir. 1955); *In re Everett*, No. 15-20328, 2018 Bankr. LEXIS 3759 (Bankr. S.D. Tex. Nov. 29, 2018); RESTATEMENT 2D OF CONTRACTS, § 326(1) ("[A]n assignment of a part of a right, whether the part is specified as a fraction, as an amount, or otherwise, is operative as to that part to the same extent and in the same manner as if the part had been a separate right.").

to pay Ryan the $140,731.63 due for Ryan's Services within 10 days of the Estate's receipt of the Refunds from the Illinois taxing authorities.

28.    In light of the foregoing, Ryan requests an order authorizing payment of $167,911.85 as the remaining amount due for the Services rendered for the Debtors.  The amount Ryan requests for the Services and expenses related thereto is reasonable, appropriate, and calculated in accord with the Agreements governing the successful efforts to obtain refunds between the Debtors and Ryan.

29.    Furthermore, because Debtors made payments post-petition for services rendered by Ryan after the Petition Date, and Ryan rendered those services pursuant to the OCP Order, Ryan applies for an order declaring the fees for those services and the related expenses are reasonable and appropriate and that Debtors' payments in the amount of $35,549.00 were permitted.  Specifically, Ryan provided services post-petition related to property tax administration and annual compliance for 2022, annual compliance and tax bill processing, multistate tax compliance for June, July, and August 2022, and Pennsylvania and California sales and use tax review in May and June 2022, respectively.

CONCLUSION AND REQUESTED RELIEF

**WHEREFORE**, Ryan, as tax consultant to the Debtors, respectfully requests that the Court enter an order (a) allowing Ryan an administrative expense claim of $203,360.85 as reasonable compensation for actual, necessary services performed by Ryan and reimbursement of reasonable out-of-pocket expenses, (b) authorizing and directing the Estate to pay Ryan the remaining outstanding balance of $167,911.85, namely (i) $27,180.22 for Invoice Nos. 491731, 502501, and 502425 and (ii) $140,731.63 for unbilled Services rendered by Ryan upon receipt of the Refunds; and (c) granting to Ryan such other and further relief as is just.

Dated:  May 17, 2023                                            Respectfully submitted,

                                                               **MACAULEY LLC**


                                                               */s/ Thomas G. Macauley*
                                                               Thomas G. Macauley (No. 3411)
                                                               300 Delaware Ave., Suite 1018
                                                               Wilmington, DE  19801
                                                               (302) 656-0100

                                                               **ATTORNEYS FOR RYAN, LLC**