**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | **Chapter 7** |
| **ARMSTRONG FLOORING, INC.,** *et al.*, | **Case No. 22-10426 (MFW)** |
| Debtors.[1] | **(Jointly Administered)** |
| | Hearing Date: June 21, 2023, at 2:00 p.m. (ET) |
| | Obj. Deadline: June 7, 2023, at 4:00 p.m. (ET) |

**SUMMARY COVER SHEET TO THE FOURTH INTERIM AND
FINAL FEE APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP,
AS BANKRUPTCY COUNSEL FOR THE DEBTORS, FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF ALL ACTUAL AND NECESSARY
EXPENSES FOR (I) THE FOURTH INTERIM PERIOD OF FEBRUARY 1, 2023
THROUGH MAY 17, 2023 AND (II) THE FINAL FEE PERIOD
OF MAY 8, 2022 THROUGH MAY 17, 2023**

Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**"), as bankruptcy counsel

for the debtors in the above-captioned cases (the "**Debtors**"), submits this fourth interim and final

fee application (the "**Final Fee Application**") for: (a) final allowance and approval of

$11,393,201.50 in compensation and $127,404.80 in reimbursement of fees approved on an

interim basis for the period from May 8, 2022, through and including July 31, 2022 (the "**First

Interim Fee Period**") pursuant to the First Interim Fee Order (as defined below) [Docket No. 916],

(b) final allowance and approval of $1,304,134.50 in compensation and $26,517.52 in

reimbursement of fees approved on an interim basis for the period from August 1, 2022, through

and including October 31, 2022 (the "**Second Interim Fee Period**") pursuant to the Second

Interim Fee Order (as defined below) [Docket No. 1056], (c) both interim and final allowance and

---

[1]     The Debtors in these chapter 7 cases, along with the last four digits of their respective tax identification numbers, are as follows: Armstrong Flooring, Inc. (3305); AFI Licensing LLC (3265); Armstrong Flooring Latin America, Inc. (2943); and Armstrong Flooring Canada Ltd. (N/A). The address of the Debtors' corporate headquarters is PO Box 10068, 1770 Hempstead Road, Lancaster, PA 17065.

approval of $132,340.00 in compensation and $1,410.34 in reimbursement of fees for the period

from November 1, 2022, through and including January 31, 2023 (the "**Third Interim Fee**

**Period**"), and (d) both interim and final allowance and approval of $286,493.50 in compensation

and $245.93 in reimbursement of actual and necessary expenses to be paid (assuming no objection

is made to Skadden's Twelfth Monthly Fee Application (as defined below) [Docket No. 1402])

for the period from February 1, 2023, through May 17, 2023 (the "**Fourth Interim Fee Period**"),

inclusive of $49,871.00 in fees Skadden incurred from the April 17, 2023 conversion to cases

under chapter 7 through May 17, 2023 (the "**Post-Conversion Period**") in connection with

preparing this Final Fee Application, Skadden's Eleventh and Twelfth Monthly Fee Applications,

and responding to information requests from the chapter 7 trustee (the "**Trustee**").[2] Ultimately,

Skadden seeks cumulative final allowance and approval of compensation for professional services

in the amount of $13,116,169.50 and reimbursement of actual and necessary expenses in the

amount of $155,578.59 for the services it provided during the First Interim Fee Period, the Second

Interim Fee Period, the Third Interim Fee Period, and the Fourth Interim Fee Period (together, the

"**Final Fee Period**").

| Name of Applicant: | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
|---|---|
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | June 8, 2022, *nunc pro tunc* to May 8, 2022 |
| Period for which compensation and reimbursement is sought | May 8, 2022, through May 17, 2023 |

---

[2] As part of this Final Fee Application, Skadden also intends to seek allowance for any incremental fees and expenses Skadden may incur in conjunction with this Final Fee Application, including fees related to preparing this Final Fee Application that were not reflected in the Post-Conversion Period invoice as of the date hereof, responding to any objections thereto, and presenting this Final Fee Application to the Court. Skadden will file a supplement in advance of the hearing to consider approval of this Final Fee Application reflecting any such amounts incurred through entry of an order regarding this Final Fee Application.

| | |
|---|---|
| Amount of compensation sought as actual, reasonable and necessary for the Fourth Interim Fee Period: | $286,493.50 |
| Amount of reimbursement sought as actual, reasonable and necessary for the Fourth Interim Fee Period: | $245.93 |
| Amount of compensation sought as actual, reasonable and necessary for the Final Fee Period: | $13,116,169.50 |
| Among of reimbursement sought as actual, reasonable and necessary for the Final Fee Period: | $155,578.59 |
| Total compensation and expense reimbursement requested for the Final Fee Period: | $13,271,748.09 |
| Total compensation approved by interim order to date: | $12,697,336 |
| Total reimbursement approved by interim order to date: | $153,922.32 |
| Total compensation and reimbursement approved by interim order to date: | $12,851,258.32 |
| Total allowed compensation and reimbursement paid to date: | $10,790,251 |
| Compensation sought in Final Fee Period already paid pursuant to a monthly compensation order but not yet allowed: | $0 |
| Reimbursement sought in Final Fee Period already paid pursuant to a monthly compensation order but not yet allowed: | $0 |

This is a:        __ monthly    __x__ interim    __x__ final application

If this is not the first application filed, disclose the following for each prior application:

| DATE FILED | PERIOD COVERED | REQUESTED FEES/EXPENSES | APPROVED FEES/EXPENSES (INTERIM BASIS) |
|---|---|---|---|
| 06/18/22 D.I. 389 | 5/8/22-5/31/20 | $3,547,393.25/$40,698.87 | $2,837,914.60/$40,698.87 |
| 7/26/22 D.I. 618 | 6/1/22-6/30/22 | $4,264,019.50/$42,594.50 | $3,411,215.60/$42,594.50 |
| 8/15/22 D.I. 705 | 7/1/22-7/31/22 | $3,672,288.75/$54,111.43 | $2,937,831.00/$54,111.43 |
| 8/24/22 D.I. 737 | 5/8/22-7/31/22 | $11,396,701.50/$137,404.80 | $11,393,201.50/$127,404.80 |
| 9/15/22 D.I. 833 | 8/1/22-8/31/22 | $803,997.50/$18,459.30 | $643,198.00/$18,459.30 |
| 10/18/22 D.I. 929 | 9/1/22-9/30/22 | $316,730.50/$6,905.21 | $253,384.40/$6,905.21 |
| 11/18/22 D.I. 999 | 10/1/22-10/31/22 | $183,406.50/$1,153.01 | $146,725.20/$1,153.01 |
| 11/28/22 D.I. 1022 | 8/1/22-10/31/22 | $1,304,134.50/$26,517.52 | $1,304,134.50/$26,517.52 |
| 12/15/22 D.I. 1044 | 11/1/22-11/30/22 | $65,620.50/$327.20 | $52,496.40/$327.20 |
| 1/18/23 D.I. 1091 | 12/1/22-12/31/22 | $51,569.00/$0.00 | $41,255.20/$0.00 |
| 2/22/23 D.I. 1223 | 1/1/23-1/31/23 | $27,150.50/$1,567.27 | $21,720.40/$1,567.27 |
| 3/10/23 D.I. 1269 | 11/1/22-1/31/23 | $132,340.00/$1,410.34 | $TBD[3] |
| 4/13/23 D.I. 1350 | 2/1/23-2/28/23 | $74,543.00/$57.93 | $59,634.40/$57.93 |
| 4/24/23 D.I. 1366 | 3/1/23-3/31/23 | $100,796.00/$0.00 | $80,636.80/$0.00 |
| 5/17/23 D.I. 1402 | 4/1/23-4/17/23 | $61,283.50/$188.00 | $TBD[4] |

---

[3]   Skadden received no objections to the Third Interim Fee Application and accordingly filed a certificate of no objection together with a proposed form of order on April 17, 2023 at Docket No. 1356. As of the date hereof, the Court has not yet entered the proposed form of order. For purposes of this Final Fee Application, Skadden seeks both interim and final allowance and approval of amounts requested pursuant to the Third Interim Fee Application.

[4]   Approval of these amounts is to be determined following the expiration of the objection period for Skadden's Twelfth Monthly Fee Application, filed May 17, 2023, at Docket No. 1402.

**COMPENSATION BY PROFESSIONAL FOR THE FOURTH INTERIM FEE PERIOD**

**ARMSTRONG FLOORING, INC.**
**(CASE NO. 22-10426 (MFW))**

**FEBRUARY 1, 2023 THROUGH MAY 17, 2023**

| NAME | DEPARTMENT | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|---|
| **PARTNER** | | | | | |
| Steven J. Daniels | M&A | 1996 | $1,960.00 | 34.40 | $ 67,424.00 |
| Ron E. Meisler | Corporate Restructuring | 1999 | 1,960.00 | 18.00 | 35,280.00 |
| | | | | | |
| | **TOTAL PARTNER** | | | **52.40** | **$ 102,704.00** |
| | | | | | |
| **COUNSEL** | | | | | |
| Brooks E. Allen | International Trade | 2001 | $1,565.00 | 0.20 | $ 313.00 |
| Peter Luneau | Mass Tort | 2004 | 1,665.00 | 4.70 | 7,825.50 |
| | | | | | |
| | **TOTAL COUNSEL** | | | **4.90** | **$ 8,138.50** |
| | | | | | |
| **ASSOCIATE** | | | | | |
| Vincent J. Cannizzaro III | M&A | 2014 | $1,390.00 | 40.00 | $ 55,600.00 |
| Jacqueline M. Dakin | Corporate Restructuring | 2019 | 1,150.00 | 6.90 | 7,935.00 |
| Kevin Foley | M&A | 2020 | 1,020.00 | 21.60 | 22,032.00 |
| Anthony Joseph | Corporate Restructuring | 2018 | 1,230.00 | 23.80 | 29,274.00 |
| Justin Larsen | M&A | 2022 | 860.00 | 0.40 | 344.00 |
| Jennifer Madden | Corporate Restructuring | 2010 | 1,390.00 | 4.70 | 6,533.00 |
| Yelena L. Nersesyan | Real Estate | 2011 | 1,390.00 | 0.70 | 973.00 |
| Jeffrey R. Regester | M&A | 2019 | 1,230.00 | 1.20 | 1,476.00 |
| Rebecca L. Ritchie | Corporate Restructuring | 2021 | 1,020.00 | 43.00 | 43,860.00 |
| | | | | | |
| | **TOTAL ASSOCIATE** | | | **142.30** | **$ 168,027.00** |
| **CLIENT SPECIALIST** | | | | | |
| William C. Terry | | N/A | $640.00 | 0.40 | $ 256.00 |
| | | | | | |
| | **TOTAL CLIENT SPECIALIST** | | | **0.40** | **$ 256.00** |
| | | | | | |
| **PARAPROFESSIONALS** | | | | | |
| Christopher M. Heaney | | N/A | $540.00 | 4.90 | $ 2,646.00 |
| Catherine D. Ledyard | | N/A | 625.00 | 6.00 | 3,750.00 |

| | | | | | |
|---|---|---|---|---|---|
| Paris Smeraldo | | N/A | 540.00 | 1.80 | 972.00 |
| | **TOTAL PARAPROFESSIONALS** | | | **12.70** | **$    7,368.00** |
| | | **TOTAL** | | **212.70** | **$ 286,493.50** |
| **BLENDED HOURLY RATE** | **$1,346.94** | | | | |

**COMPENSATION BY PROJECT CATEGORY FOR THE FOURTH INTERIM FEE PERIOD**

**ARMSTRONG FLOORING, INC.**
**(CASE NO. 22-10426 (MFW))**

**FEBRUARY 1, 2023 THROUGH MAY 17, 2023**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| General Corporate Advice | 63.30 | $89,966.00 |
| Asset Dispositions (General) | 2.30 | $4,143.00 |
| Business Operations / Strategic Planning | 52.50 | $81,808.00 |
| Case Administration | 4.00 | $3,113.00 |
| Claims Admin. (General) | 1.50 | $1,887.00 |
| Creditor Meetings / Statutory Committees | 1.00 | $1,520.00 |
| Insurance | 12.10 | $16,679.50 |
| Retention / Fee Matters (SASM&F) | 71.70 | $82,308.00 |
| Retention / Fee Matters / Objections (Others) | 3.80 | $4,411.00 |
| Tax Matters | 0.30 | $345.00 |
| Vendor Matters | 0.20 | $313.00 |
| **TOTAL** | **212.70** | **$286,493.50** |

**EXPENSE SUMMARY FOR THE FOURTH INTERIM FEE PERIOD**

**ARMSTRONG FLOORING, INC.**
**(CASE NO. 22-10426 (MFW))**

**FEBRUARY 1, 2023 THROUGH MAY 17, 2023**

| Expense Category | Total Expenses |
|---|---|
| Computer Legal Research | $ 150.00 |
| Outside Research | $83.90 |
| Courier & Express Carriers (e.g., Federal Express) | $12.03 |
| **TOTAL** | **$245.93** |

**COMPENSATION BY PROFESSIONAL FOR THE FINAL FEE PERIOD**

**ARMSTRONG FLOORING, INC.**
**(CASE NO. 22-10426 (MFW))**

**MAY 8, 2022 THROUGH MAY 17, 2023**

| NAME | DEPARTMENT | YEAR OF ADMISSION | RATE[5] | HOURS | AMOUNT |
|---|---|---|---|---|---|
| **PARTNER** | | | | | |
| Trevor R. Allen | Tax | 2011 | $1,595.00 | 79.20 | $126,324.00 |
| Jennifer L. Bragg | Litigation | 1996 | $1,785.00 | 1.50 | 2,677.50 |
| Brian V. Breheny | M&A | 1997 | $1,785.00 | 0.50 | 892.50 |
| Marco P. Caffuzzi | Real Estate | 1997 | $1,785.00 | 4.20 | 7,497.00 |
| Tracey L. Chenoweth | Banking | 2008 | $1,595.00 | 77.40 | 123,453.00 |
| Eric L. Cochran | M&A | 1987 | $1,980.00 | 8.10 | 16,038.00 |
| Steven J. Daniels | M&A | 1996 | $1,785.00 | 706.50 | 1,261,102.50 |
| | | | $1,960.00 | 35.50 | 69,580.00 |
| Frederic Depoortere | Antitrust/Competition | 1993 | $1,785.00 | 3.00 | 5,355.00 |
| Raquel Fox | M&A | 2004 | $1,465.00 | 0.50 | 732.50 |
| Bruce Goldner | IP & Tech Trans | 1993 | $1,785.00 | 43.30 | 77,290.50 |
| Armando Gomez | Tax | 1994 | $1,875.00 | 0.50 | 937.50 |
| Albert L. Hogan III | Litigation | 1997 | $1,785.00 | 85.20 | 152,082.00 |
| Joseph O. Larkin | Corporate Restructuring | 2006 | $848.00 | 8.20 | 6,949.50 |
| | | | $1,695.00 | 266.50 | 451,717.50 |
| Steven J. Matays | Tax | 2001 | $1,980.00 | 20.20 | 39,996.00 |
| James J. Mazza, Jr. | Corporate Restructuring | 2001 | $848.00 | 15.50 | 13,136.25 |
| | | | $1,695.00 | 171.40 | 290,523.00 |
| Ron E. Meisler | Corporate Restructuring | 1999 | $893.00 | 15.80 | 14,101.50 |
| | | | $1,785.00 | 634.70 | 1,132,939.50 |
| | | | $1,960.00 | 19.40 | 38,024.00 |

[5] During this Final Fee Period, Skadden implemented (i) customary firm-wide step rate increases, effective September 1, 2022, due to class-on-class progression of certain Skadden individuals and (ii) customary firm-wide annual rate increases for all Skadden timekeepers, effective January 1, 2023. Accordingly, depending on when the applicable professional and paraprofessional rendered services on behalf of the client, such professional or paraprofessional may have billed a different rates, as reflected in this chart and the time detail appended to this Final Fee Application. Nonworking travel time is billed at a 50% rate discount.

| Name | Department | Year | Rate | Hours | Amount |
|---|---|---|---|---|---|
| Timothy G. Nelson | International Litigation & Arbitration | 1997 | $1,785.00 | 1.20 | 2,142.00 |
| Erica Schohn | Exec. Comp & Benefits | 2004 | $1,785.00 | 8.00 | 14,280.00 |
| David E. Schwartz | Labor | 1994 | $1,785.00 | 17.40 | 31,059.00 |
| Chade Severin | M&A | 2014 | $1,595.00 | 6.60 | 10,527.00 |
| Jonathan B. Stone | Corporate | 1991 | $1,875.00 | 34.90 | 65,437.50 |
| Richard H. West | M&A | 2000 | $1,465.00 | 3.80 | 5,567.00 |
| | | **TOTAL PARTNER** | | **2,269.00** | **$ 3,960,361.75** |
| **OF COUNSEL** | - | | | | |
| Andrew J. Brady | M&A | 1996 | $1,465.00 | 0.30 | $439.50 |
| Helena J. Derbyshire | Labor | 1993 | $1,465.00 | 0.50 | 732.50 |
| | | **TOTAL OF COUNSEL** | | **0.80** | **$ 1,172.00** |
| **COUNSEL** | - | | | | |
| Ryan J. Adams | M&A | 2013 | $1,300.00 | 0.70 | $910.00 |
| Brooks E. Allen | International Trade | 2001 | $1,410.00 | 101.10 | 142,551.00 |
| | | | $1,565.00 | 0.30 | 469.50 |
| Rita Sinkfield Belin | Antitrust/Competition | 1996 | $1,410.00 | 0.70 | 987.00 |
| M. Oren Epstein | IP & Tech Trans | 2003 | $1,495.00 | 3.20 | 4,784.00 |
| Carl R. Erdmann | Tax | 1996 | $1,410.00 | 5.80 | 8,178.00 |
| Berit R. Freeman | Exec. Comp & Benefits | 1991 | $1,410.00 | 94.00 | 132,540.00 |
| Wilfred Ho | International Litigation & Arbitration | 2010 | $1,410.00 | 2.50 | 3,525.00 |
| Tabitha B. Humphries | Banking | 2010 | $1,300.00 | 34.20 | 44,460.00 |
| Andreas Kafetzopoulos | Antitrust/Competition | 2003 | $1,410.00 | 27.50 | 38,775.00 |
| Peter Luneau | Mass Tort | 2004 | $1,495.00 | 45.70 | 68,321.50 |
| | | | $1,665.00 | 5.30 | 8,824.50 |
| Elizabeth A. Malone | Environmental | 2002 | $1,495.00 | 2.30 | 3,438.50 |
| Ryne C. Posey | Labor | 2014 | $1,300.00 | 142.90 | 185,770.00 |
| | | **TOTAL COUNSEL** | | **466.20** | **$ 643,534.00** |
| **ASSOCIATE** | - | | | | |
| Jacqueline Arena | Antitrust/Competition | 2011 | $1,275.00 | 1.00 | $1,275.00 |

| Name | Department | Year | Rate | Hours | Amount |
|---|---|---|---|---|---|
| John J. Battaglia | Exec. Comp & Benefits | 1995 | $1,275.00 | 40.50 | 51,637.50 |
| Joseph I. Ben-Maimon | International Litigation & Arbitration | 2019 | $1,055.00 | 1.60 | 1,688.00 |
| Douglas A. Bresnick | Tax | 2021 | $785.00 | 51.90 | 40,741.50 |
| | | | $925.00 | 1.30 | 1,202.50 |
| Anna I. Burke | Banking | 2020 | $785.00 | 32.60 | 25,591.00 |
| Vincent J. Cannizzaro III | M&A | 2014 | $1,275.00 | 764.30 | 974,482.50 |
| | | | $1,390.00 | 43.40 | 60,326.00 |
| Joby Celoza | Labor | 2021 | $785.00 | 55.60 | 43,646.00 |
| Arthur Chan | Corporate | 2016 | $1,170.00 | 134.00 | 156,780.00 |
| Rachel Cheng | Litigation | 2021 | $785.00 | 16.10 | 12,638.50 |
| Matthew Conrad | Litigation | 2019 | $925.00 | 30.10 | 27,842.50 |
| Jackie Dakin | Corporate Restructuring | 2019 | $463.00 | 4.00 | 1,850.00 |
| | | | $925.00 | 620.60 | 574,055.00 |
| | | | $1,055.00 | 17.10 | 18,040.50 |
| | | | $1,150.00 | 7.80 | 8,970.00 |
| Christopher M. Dressel | Corporate Restructuring | 2010 | $638.00 | 18.90 | 12,048.75 |
| | | | $1,275.00 | 204.60 | 260,865.00 |
| Josh Ehrhart | Exec. Comp & Benefits | 2021 | $785.00 | 9.60 | 7,536.00 |
| | | | $925.00 | 1.00 | 925.00 |
| Ellie M. Fain | National Security | 2021 | $645.00 | 6.80 | 4,386.00 |
| Cameron M. Fee | Corporate Restructuring | 2011 | $1,275.00 | 204.30 | 260,482.50 |
| Robert E. Fitzgerald | Corporate Restructuring | 2016 | $585.00 | 10.30 | 6,025.50 |
| | | | $1,170.00 | 330.10 | 386,217.00 |
| Alex Fogg | Capital Markets | 2021 | $785.00 | 63.60 | 49,926.00 |
| | | | $925.00 | 0.70 | 647.50 |
| Kevin Foley | M&A | 2020 | $393.00 | 0.60 | 235.50 |
| | | | $785.00 | 372.10 | 292,098.50 |
| | | | $925.00 | 23.50 | 21,737.50 |
| | | | $1,020.00 | 24.30 | 24,786.00 |
| Ryan J. Foley | Mass Tort | 2019 | $1,055.00 | 7.30 | 7,701.50 |
| Benjamin J. Gilman | Labor | 2022 | $550.00 | 389.80 | 214,390.00 |
| Blake M. Grady | M&A | 2018 | $1,055.00 | 0.90 | 949.50 |

| Tabitha B. Humphries | Banking | 2010 | $1,275.00 | 97.90 | 124,822.50 |
|---|---|---|---|---|---|
| Kendall R. Ickes | IP & Tech Trans | 2020 | $925.00 | 2.80 | 2,590.00 |
| Anthony Joseph | Corporate Restructuring | 2018 | $528.00 | 10.00 | 5,275.00 |
| | | | $1,055.00 | 663.90 | 700,414.50 |
| | | | $1,130.00 | 43.80 | 49,494.00 |
| | | | $1,230.00 | 26.00 | 31,980.00 |
| Jessica R. Kunz | Litigation | 2012 | $1,275.00 | 33.00 | 42,075.00 |
| Joseph I. Lanzilotta | Real Estate | 2021 | $785.00 | 39.60 | 31,086.00 |
| | | | $925.00 | 4.10 | 3,792.50 |
| Justin Larsen | M&A | 2022 | $645.00 | 379.40 | 244,713.00 |
| | | | $785.00 | 1.90 | 1,491.50 |
| | | | $860.00 | 1.10 | 946.00 |
| Clare Lilek | Litigation | 2021 | $785.00 | 3.10 | 2,433.50 |
| Jimmy Lin | Banking | 2018 | $1,055.00 | 137.90 | 145,484.50 |
| | | | $1,130.00 | 1.00 | 1,130.00 |
| Jennifer Madden | Corporate Restructuring | 2010 | $638.00 | 61.30 | 39,078.75 |
| | | | $1,275.00 | 749.40 | 955,485.00 |
| | | | $1,390.00 | 5.00 | 6,950.00 |
| Gabriel U. Mohr | IP & Tech Trans | 2022 | $550.00 | 13.00 | 7,150.00 |
| Yelena L. Nersesyan | Real Estate | 2011 | $1,390.00 | 0.70 | 973.00 |
| Larry O'Brien | Corporate Restructuring | 2018 | $463.00 | 3.20 | 1,480.00 |
| | | | $925.00 | 322.40 | 298,220.00 |
| | | | $1,055.00 | 12.20 | 12,871.00 |
| Alexander S. Patrick | M&A | 2019 | $925.00 | 654.00 | 604,950.00 |
| | | | $1,055.00 | 30.60 | 32,283.00 |
| Ryne C. Posey | Labor | 2014 | $1,275.00 | 50.20 | 64,005.00 |
| Jeffrey R. Regester | M&A | 2019 | $528.00 | 3.30 | 1,740.75 |
| | | | $1,055.00 | 619.40 | 653,467.00 |
| | | | $1,130.00 | 51.50 | 58,195.00 |
| | | | $1,230.00 | 1.20 | 1,476.00 |
| Rebecca L. Ritchie | Corporate Restructuring | 2021 | $785.00 | 308.20 | 241,937.00 |
| | | | $925.00 | 60.80 | 56,240.00 |
| | | | $1,020.00 | 48.20 | 49,164.00 |
| Aarish Sheikh | M&A | 2018 | $565.00 | 4.00 | 2,260.00 |
| | | | $1,130.00 | 222.60 | 251,538.00 |
| Sundiata Sidibe | Antitrust/Competition | 2018 | $1,055.00 | 14.40 | 15,192.00 |
| Elizabeth A. Simon | Litigation | 2014 | $1,275.00 | 45.20 | 57,630.00 |

| | | | | | |
|---|---|---|---|---|---|
| Glen Strong | Banking | 1987 | $1,275.00 | 3.10 | 3,952.50 |
| | | **TOTAL ASSOCIATE** | | **8,219.7** | **$ 8,355,690.25** |
| **CLIENT SPECIALIST** | | | | | |
| William C. Terry | | N/A | $585.00 | 23.30 | $13,630.50 |
| | | | $640.00 | 0.40 | 256.00 |
| | | **TOTAL CLIENT SPECIALIST** | | **23.70** | **$ 13,886.50** |
| **PARAPROFESSIONALS** | | | | | |
| Andrea T. Bates | | N/A | $495.00 | 69.80 | $34,551.00 |
| Lisa M. Brown | | N/A | $210.00 | 0.30 | 63.00 |
| Martha F. Ellerson | | N/A | $495.00 | 31.90 | 15,790.50 |
| Janet Esnes | | N/A | $495.00 | 12.90 | 6,385.50 |
| Christopher M. Heaney | | N/A | $495.00 | 341.40 | 168,993.00 |
| | | | $540.00 | 7.60 | 4,104.00 |
| Uyenchi Ho | | N/A | $495.00 | 0.60 | 297.00 |
| Wendy K. LaManna | | N/A | $495.00 | 11.8 | 5,841.00 |
| Kevin W. Lustik | | N/A | $210.00 | 0.80 | 168.00 |
| Sylvia Marquez | | N/A | $495.00 | 0.30 | 148.50 |
| Monique L. Ribando | | N/A | $585.00 | 1.80 | 1,053.00 |
| Carolina Stainfeld | | N/A | $275.00 | 5.50 | 1,512.50 |
| Catherine D. Ledyard | | N/A | $625.00 | 6.00 | 3,750.00 |
| James Mitchell | | N/A | $495.00 | 0.80 | 396.00 |
| Paris Smeraldo | | N/A | $540.00 | 1.80 | 972.00 |
| | | **TOTAL PARAPROFESSIONALS** | | **493.3** | **$ 244,025.00** |
| | | | | | |
| | | | **SUB TOTAL** | **11,472.70** | **$ 13,218,669.50** |
| FEE REDUCTION FOR FIRST INTERIM FEE PERIOD | | | | | $ (90,500.00) |
| CLIENT ACCOMMODATION (RETENTION / FEE MATTERS (SASM&F)) | | | | | $ (12,000.00) |
| | | | **TOTAL** | **11,472.70** | **$ 13,116,169.50** |
| | | **BLENDED HOURLY RATE** | | | **$ 1,152.18** |

**COMPENSATION BY PROJECT CATEGORY FOR THE FINAL FEE PERIOD**

**ARMSTRONG FLOORING, INC.**
**(CASE NO. 22-10426 (MFW))**

**MAY 8, 2022 THROUGH APRIL MAY 17, 2023**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Asset Analysis and Recovery | 0.90 | $1,606.50 |
| Asset Dispositions (General) | 4,897.10 | $5,977,232.50 |
| Automatic Stay (Relief Actions) | 34.30 | $27,130.50 |
| Business Operations / Strategic Planning | 427.80 | $505,942.50 |
| Case Administration | 261.90 | $141,934.00 |
| Claims Admin. (General) | 28.40 | $25,316.00 |
| Creditor Meetings / Statutory Committees | 300.20 | $350,225.00 |
| Employee Matters (General) | 957.30 | $922,307.00 |
| Employee Matters (Labor Unions) | 569.00 | $634,416.50 |
| Environmental Matters | 7.10 | $7,878.50 |
| Executory Contracts (Personalty) | 79.80 | $84,388.00 |
| Financing (DIP and Emergence) | 1,231.90 | $1,498,280.50 |
| General Corporate Advice | 567.00 | $710,486.50 |
| Insurance | 115.70 | $152,135.00 |
| Intellectual Property | 113.50 | $136,870.50 |
| Leases (Real Property) | 8.70 | $8,747.50 |
| Litigation (General) | 397.70 | $523,819.50 |
| Nonworking Travel Time | 155.10 | $104,181.50 |
| Real Estate (Owned) | 4.20 | $7,497.00 |
| Regulatory and SEC Matters | 110.90 | $128,280.00 |
| Reorganization Plan / Plan Sponsors | 0.50 | $980.00 |
| Reports and Schedules | 1.50 | $1,473.50 |
| Retention / Fee Matters (SASM&F) | 495.00 | $469,216.50 |
| Retention / Fee Matters / Objections (Others) | 91.90 | $90,731.00 |

| Project Category | Total Hours | Total Fees |
|---|---:|---:|
| Tax Matters | 135.60 | $178,008.50 |
| U.S. Trustee Matters | 45.00 | $40,587.00 |
| Utilities | 1.80 | $1,687.00 |
| Vendor Matters | 432.90 | $475,311.00 |
| **SUB TOTAL** | **11,472.70** | **$13,206,669.50** |
| FEE REDUCTION FOR FIRST INTERIM FEE PERIOD | | $(90,500.00) |
| **TOTAL** | **11,472.70** | **$13,116,169.50** |

**EXPENSE SUMMARY FOR THE FINAL FEE PERIOD**

**ARMSTRONG FLOORING, INC.**
**(CASE NO. 22-10426 (MFW))**

**MAY 8, 2022 THROUGH MAY 17, 2023**

| Expense Category | Total Expenses |
|---|---|
| Computer Legal Research | $26,926.42 |
| Long Distance Telephone | $1,450.00 |
| In-House Reproduction (@ $0.10 per page) | $700.50 |
| Reproduction-color (@ $0.50 per page) | $27,434.00 |
| Outside Reproduction | $520.25 |
| Outside Research | $5,812.26 |
| Filing/Court Fees | $8,378.00 |
| Court Reporting | $13,951.46 |
| Local Travel | $360.17 |
| Out-Of-Town Travel | $59,948.63 |
| Business Meals | $8,823.61 |
| Courier & Express Carriers (e.g., Federal Express) | $1,529.52 |
| Electronic Document Management | $8,017.77 |
| UCC Filings and Searches | $1,726.00 |
| **SUB TOTAL** | **$165,578.59** |
| EXPENSE REDUCTION FOR FIRST INTERIM FEE PERIOD | $(10,000.00) |
| **TOTAL** | **$155,578.59** |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | **Chapter 7** |
| **ARMSTRONG FLOORING, INC.,** *et al.*, | **Case No. 22-10426 (MFW)** |
| **Debtors.**[1] | **(Jointly Administered)**<br>Hearing Date: June 21, 2023, at 2:00 p.m. (ET)<br>Obj. Deadline: June 7, 2023, at 4:00 p.m. (ET) |

**FOURTH INTERIM AND FINAL FEE APPLICATION
OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP,
AS BANKRUPTCY COUNSEL FOR THE DEBTORS, FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF
ALL ACTUAL AND NECESSARY EXPENSES FOR (I) THE FOURTH
INTERIM PERIOD OF FEBRUARY 1, 2023 THROUGH MAY 17, 2023
AND (II) THE FINAL FEE PERIOD OF MAY 8, 2022 THROUGH MAY 17, 2023**

Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**"), as bankruptcy counsel

for the debtors in the above-captioned cases (the "**Debtors**"), submits this fourth interim and final

fee application (the "**Final Fee Application**") for: (a) final allowance and approval of

$11,393,201.50 in compensation and $127,404.80 in reimbursement of fees approved on an

interim basis for the period from May 8, 2022, through and including July 31, 2022 (the "**First

Interim Fee Period**") pursuant to the First Interim Fee Order (as defined below) [Docket No. 916],

(b) final allowance and approval of $1,304,134.50 in compensation and $26,517.52 in

reimbursement of fees approved on an interim basis for the period from August 1, 2022, through

and including October 31, 2022 (the "**Second Interim Fee Period**") pursuant to the Second

Interim Fee Order (as defined below) [Docket No. 1056], (c) both interim and final allowance and

---

[1]    The Debtors in these chapter 7 cases, along with the last four digits of their respective tax identification numbers, are as follows: Armstrong Flooring, Inc. (3305); AFI Licensing LLC (3265); Armstrong Flooring Latin America, Inc. (2943); and Armstrong Flooring Canada Ltd. (N/A). The address of the Debtors' corporate headquarters is PO Box 10068, 1770 Hempstead Road, Lancaster, PA 17065.

approval of $132,340.00 in compensation and $1,410.34 in reimbursement of fees for the period from November 1, 2022, through and including January 31, 2023 (the "**Third Interim Fee Period**"), and (d) both interim and final allowance and approval of $286,493.50 in compensation and $245.93 in reimbursement of actual and necessary expenses to be paid (assuming no objection is made to Skadden's Twelfth Monthly Fee Application (as defined below) [Docket No. 1402]) for the period from February 1, 2023, through May 17, 2023 (the "**Fourth Interim Fee Period**"), inclusive of $49,871.00 in fees Skadden incurred from the April 17, 2023 conversion to cases under chapter 7 through May 17, 2023 (the "**Post-Conversion Period**") in connection with preparing this Final Fee Application, Skadden's Eleventh and Twelfth Monthly Fee Applications, and responding to information requests from the chapter 7 trustee (the "**Trustee**").[2] Ultimately, Skadden seeks cumulative final allowance and approval of compensation for professional services in the amount of $13,116,169.50 and reimbursement of actual and necessary expenses in the amount of $155,578.59 for the services it provided during the First Interim Fee Period, the Second Interim Fee Period, the Third Interim Fee Period, and the Fourth Interim Fee Period (together, the "**Final Fee Period**"). In support of this Final Fee Application, Skadden represents as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C.

---

[2]     As part of this Final Fee Application, Skadden also intends to seek allowance for any incremental fees and expenses Skadden may incur in conjunction with this Final Fee Application, including fees related to preparing this Final Fee Application that were not reflected in the Post-Conversion Period invoice as of the date hereof, responding to any objections thereto, and presenting this Final Fee Application to the Court. Skadden will file a supplement in advance of the hearing to consider approval of this Final Fee Application reflecting any such amounts incurred through entry of an order regarding this Final Fee Application.

2

§ 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), as supplemented by Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Case*, effective November 1, 2013 (the "**U.S. Trustee Guidelines**"); and the Order Authorizing Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 258] (the "**Interim Compensation Order**").

## BACKGROUND

3.      On May 8, 2022, (the "**Petition Date**"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). On May 11, 2022, this Court entered an order directing joint administration for procedural purposes only [Docket No. 88].

4.      On May 18, 2022, the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") was appointed in these cases by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**").

5.      On July 13, 2022, the Court entered orders approving the sale transactions for certain of the Debtors' North American assets (the "**North America Sale**"), certain assets of the Debtors' Australian affiliate ("**AFI Australia**" and the "**Australia Sale**"), and the equity of the Debtors' Chinese affiliate ("**AFI China**" and the "**China Sale**") [Docket Nos. 549, 550, and 551].

3

The North America Sale closed on July 25, 2022, the China Sale closed on August 1, 2022, and the Australia Sale closed on August 23, 2022.

6.      On April 17, 2023, this Court entered the *Order Converting Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [Docket No. 1352] (the "**Conversion Order**").

**RETENTION OF SKADDEN**

7.      On May 20, 2022, the Debtors filed the application to retain and employ Skadden as counsel to the Debtors [Docket No. 187] (the "**Retention Application**"), *nunc pro tunc* to the Petition Date, pursuant to and in accordance with the terms and conditions set forth in that certain engagement letter, dated January 1, 2022 (the "**Engagement Agreement**"). A copy of the Engagement Agreement was appended to the Retention Application as Exhibit B.1. As of the Petition Date, Skadden was holding, and continues to hold, a retainer in the amount of $5,000 with respect to the Debtors and a retainer in the amount of $5,000 with respect to non-Debtor affiliates.

8.      On June 8, 2022, the Court entered the order approving the Retention Application [Docket No. 315] (the "**Retention Order**"). The Retention Order authorized Skadden's retention, effective as of the Petition Date, in accordance with the provisions of the Retention Order and the Engagement Agreement, as modified by the Retention Order.[3]

**INTERIM AND FINAL COMPENSATION PROCEDURES**

9.      On June 1, 2022, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals retained in the Chapter 11 Cases (the "**Interim Compensation Procedures**"). The Interim

---

[3]    In further support of its Retention Application, on August 12, 2022, Skadden filed a supplemental declaration by Ron E. Meisler pursuant to Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rules 2014-1 and 2016-1 [Docket No. 695].

Compensation Procedures provide, among other things, that on or after the 15th day of each month, each retained professional may file a monthly fee application for interim allowance of its fees earned and expenses incurred during the preceding month. If no objection is filed within 21 days of the filing and service of a monthly fee application, the Debtors are authorized and directed to pay the retained professional 80% of the fees and 100% of the expenses requested in the applicable monthly fee application.

10.     Further, the Interim Compensation Procedures provide that, unless a chapter 11 plan of reorganization or liquidation has become effective, beginning with the three-month period from the Petition Date through July 31, 2022, and at three-month intervals thereafter, each professional must file with the Court and serve upon certain notice parties an interim fee application for compensation and reimbursement of expenses sought in the monthly fee applications served during such three-month period. The interim fee application must include a brief description identifying (a) the monthly fee applications that are the subject of the request, (b) the amount of fees and expense reimbursement requested, (c) the amount of fees and expense reimbursement paid to date or subject to an objection, (d) the deadline for parties to file objections to the interim fee application, and (e) any other information requested by the Court or required by the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules. Retained professionals must file their applicable interim fee applications on or before the 30th day following the end of each interim fee period.

11.     On April 17, 2023, the Court entered the Conversion Order. The Conversion Order provides that all professionals shall submit a final fee application by no later than 30 days from the entry of the Conversion Order, which is May 17, 2023, and that the Court will hold a hearing on such final fee applications on June 21, 2023, at 2:00 p.m. (prevailing Eastern Time). Final fee

applications shall be in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and orders of this Court and must include (a) the amount such retained professional has been paid to date, (b) any remaining retainer amount held, (c) any amounts held in a reserve for purposes of paying professional fees, and (d) the remaining amount outstanding.

**MONTHLY AND INTERIM FEE REQUESTS**

12.     In accordance with the Interim Compensation Procedures, Skadden filed monthly fee applications on:

(a)     June 18, 2022 [Docket No. 389], covering the period from May 8, 2022, through May 31, 2022;

(b)     July 26, 2022 [Docket No. 618], covering the Period from June 1, 2022, through June 30, 2022;

(c)     August 15, 2022 [Docket No. 705], covering the period from July 1, 2022, through July 31, 2022;

(d)     September 15, 2022 [Docket No. 833], covering the period from August 1, 2022, through August 31, 2022;

(e)     October 18, 2022 [Docket No. 929], covering the period from September 1, 2022, through September 30, 2022;

(f)     November 18, 2022 [Docket No. 999], covering the period from October 1, 2022, through October 31, 2022;

(g)     December 15, 2022 [Docket No. 1044], covering the period from November 1, 2022, through November 30, 2022;

(h)     January 18, 2023 [Docket No. 1091], covering the period from December 1, 2022, through December 31, 2022;

(i)     February 22, 2023 [Docket No. 1223], covering the period from January 1, 2023, through January 31, 2023;

(j)     April 13, 2023 [Docket No. 1350], covering the period from February 1, 2023, through February 28, 2023; (the "**Tenth Monthly Fee Application**")

(k)     April 24, 2023 [Docket No. 1366], covering the period from March 1, 2023, through March 31, 2023 (the "**Eleventh Monthly Fee Application**"); and

6

(l)     May 17, 2023 [Docket No. 1402], covering the period from April 1, 2023, through April 17, 2023 (the "**Twelfth Monthly Fee Application**").

13.     On August 24, 2022, Skadden filed its first interim fee application regarding services provided to the Debtors during the First Interim Fee Period [Docket No. 737] (the "**First Interim Fee Application**"). On October 13, 2022, the Court entered an order approving the First Interim Fee Application [Docket No. 916] (the "**First Interim Fee Order**"), granting Skadden interim allowance and approval of $11,393,201.50 in compensation, including a cumulative 20% holdback amount from the First Interim Fee Period of $2,296,740.30, and $127,404.80 in reimbursement of fees. These amounts reflect fee and expense reductions of $90,500.00 and $10,000.00, respectively, requested by and agreed to with the U.S. Trustee and the Court. To date, the Debtors have paid Skadden $10,790,251.00 of the $11,520,606.30 in total fees and expense reimbursement the Court approved in the First Interim Fee Order.

14.     On November 28, 2022, Skadden filed its second interim fee application (the "**Second Interim Fee Application**") regarding services provided to the Debtors during the Second Interim Fee Period [Docket No. 1022]. On December 22, 2022, the Court entered an order [Docket No. 1056] (the "**Second Interim Fee Order**" and together with the First Interim Fee Order, the "**Interim Fee Orders**") approving the Second Interim Fee Application, granting Skadden interim allowance and approval of $1,304,134.50 in compensation, including a cumulative 20% holdback amount from the Second Interim Fee Period of $260,826.90, and $26,517.52 in reimbursement of expenses. To date, the Debtors have not paid Skadden any of the fees and expense reimbursement approved in the Second Interim Fee Order.

15.     On March 10, 2023, Skadden filed its third interim fee application (the "**Third Interim Fee Application**") regarding services provided to the Debtors during the Third Interim Fee Period [Docket No. 1269]. No objections were received to the Third Interim Fee Application,

7

and on April 17, 2023, Skadden filed a certificate of no objection together with a proposed form of order granting Skadden interim allowance and approval of $132,340.00 in compensation and $1,410.34 in reimbursement of expenses [Docket No. 1356]. This amount reflects a client accommodation of $12,000.00 for services Skadden provided during the Third Interim Fee Period in respect of Skadden's retention and fee matters. As of the date hereof, the Court has not entered the order approving the Third Interim Fee Application, nor have the Debtors paid Skadden any of the fees and expense reimbursement Skadden requested pursuant to monthly fee applications throughout the Third Interim Fee Period.

16.     No objections were received as to the Tenth and Eleventh Monthly Fee Applications, and Skadden professionals filed certificates of no objection accordingly. Nevertheless, Skadden has not received payment for 80% of the fees and 100% of the expenses requested in the Tenth and Eleventh Monthly Fee Applications.

17.     The objection deadline for the Twelfth Monthly Fee Application is June 7, 2023. Subject to any objections received by the deadline, Skadden intends to file a certificate of no objection and would be permitted to seek payment of 80% of the fees and 100% of the expenses requested in the Twelfth Monthly Fee Application. In the event any objections are filed to Skadden's Twelfth Monthly Fee Application, Skadden will, pursuant to the Interim Compensation Procedures, either (a) file with the Court a response to such objections, together with a request for payment of any portion of the amounts subject to the Objection, or (b) forgo payment of the amount subject to such objections until the hearing to consider this Final Fee Application, at which time Skadden will request that the Court adjudicate any unresolved objections.

**ADDITIONAL INFORMATION REQUIRED UNDER CONVERSION ORDER**

18.     To date, the Debtors have paid Skadden a total of $10,790,251.00 of the fees and expense reimbursement approved in the Interim Fee Orders, all of which was paid through the Debtors' professional fee escrow, which was established for purposes of complying with the DIP Order mechanics [Docket Nos. 311 and 581] and the Interim Compensation Order for purposes of retained professional fees. As of the date hereof, Skadden is holding, and continues to hold, a retainer in the amount of $5,000.00 with respect to the Debtors and a retainer in the amount of $5,000.00 with respect to non-Debtor affiliates.

19.     The Debtors' professional fee escrow account contained approximately $321,958.45 as of May 3, 2023. In addition, out of the approximately $1 million remaining in total wind-down funds held in a debtor account at Bank of America, approximately $500,000.00 was allocated specifically for the payment of professional fees. Riveron Management Services, LLC, which provided interim management services to the Debtors, advises that the chapter 7 trustee withdrew all wind-down funds on April 28, 2023.

20.     Skadden is owed the remaining outstanding amount of $2,481,497.09, which consists of (a) previously approved but unpaid fees and expense reimbursement from the First Interim Fee Period and the Second Interim Fee Period in the amount of $2,061,007.32; (b) fees and expense reimbursement in the amount of $133,750.34 with respect to the Third Interim Fee Period for which Skadden filed a certificate of no objection but with regard to which the Court has not yet entered an interim order; and (c) fees and expense reimbursement sought under this Final Fee Application for the Fourth Interim Fee Period that have not yet been approved in the amount of $286,739.43, including $49,871.00 in fees pertaining to this Final Fee Application, Skadden's Eleventh and Twelfth Monthly Fee Applications, and responses to information requests from the

Trustee during the Post-Conversion Period. In addition, Skadden may incur additional incremental fees and expenses in conjunction with this Final Fee Application, including fees related to preparing this Final Fee Application that were not reflected in the Post-Conversion Period invoice as of the date hereof, responding to any objections thereto, and presenting this Final Fee Application to the Court. Skadden will file a supplement in advance of the hearing to consider approval of this Final Fee Application reflecting any such amounts incurred through entry of an order regarding this Final Fee Application.

**RELIEF REQUESTED**

21.     By this Final Fee Application, Skadden requests (a) interim allowance and approval of compensation for professional services rendered to the Debtors, in the amount of $132,340.00, and reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $1,410.34, for the Third Interim Period, (b) interim allowance and approval of compensation for professional services rendered to the Debtors, in the amount of $286,493.50, and reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $245.93, for the Fourth Interim Fee Period (assuming no objection is made to Skadden's Twelfth Monthly Fee Application), including $49,871.00 in fees for the Post-Conversion Period, (c) final allowance and approval of compensation for professional services in the amount of $13,116,169.50 and reimbursement of actual and necessary expenses in the amount of $155,578.59 for the Final Fee Period, and (d) permission to apply the $5,000 retainer Skadden is holding with respect to the Debtors to Skadden's outstanding fees and expense reimbursement and to turn over the $5,000 retainer Skadden is holding with respect to a non-Debtor affiliate to such non-Debtor affiliate.

10

22.     As part of this Final Fee Application, Skadden also intends to seek allowance for any incremental fees and expenses Skadden may incur in conjunction with this Final Fee Application, including fees related to preparation of this Final Fee Application that were not reflected in the Post-Conversion Period time detail as of the date hereof, responding to any objections thereto, and presenting this Final Fee Application to the Court. Skadden will file a supplement in advance of the hearing to consider approval of this Final Fee Application reflecting any such amounts incurred through entry of an order regarding this Final Fee Application.

23.     Skadden incorporates herein by reference the Tenth, Eleventh, and Twelfth Monthly Fee Applications filed during the Fourth Interim Fee Period together with the corresponding certificates of no objection.

24.     A narrative statement of the services rendered during the Final Fee Period covered is set forth herein. Fees for services have been determined based solely on Skadden professionals' billing rates and hours billed.

25.     The fees and expense reimbursement sought in this Final Fee Application reflect total client accommodations of $9,506.00 for the Fourth Interim Fee Period and $529,882.27 for the Final Fee Period.[4]

26.     Skadden has received no promise of payment for professional services rendered or to be rendered in the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code.

## BASIS FOR INTERIM AND FINAL RELIEF

---

[4]     In the event that any objections to this Final Fee Application are filed, Skadden reserves the right to recapture and seek allowance for all or any part of these client accommodations, as well as any accrued but unbilled time for the period from April 1, 2023 through and including April 17, 2023, other than those accommodations specifically agreed to (i) with the U.S. Trustee and (ii) with the Court at the hearing with respect to approval of the First Interim Fee Application, in each case to resolve the respective issues raised.

27.     Skadden submits that the legal services and advice that it rendered to the Debtors during the Final Fee Period, including the Fourth Interim Fee Period, were necessary and beneficial to the Debtors, their creditors, and their estates. Throughout the Chapter 11 Cases, Skadden professionals provided a high level of service to the Debtors. Skadden professionals devoted substantial time to researching, drafting, analyzing, negotiating, and resolving numerous issues. Skadden's efforts on behalf of the Debtors assisted the Debtors in consummating a prompt and successful going-concern sale of substantially all of the Debtors' assets (the "**Sale**"), maximizing value for their estates and creditors.

28.     During the Fourth Interim Fee Period, Skadden attorneys and paraprofessionals devoted a total of 212.70 hours to representing the Debtors in the Chapter 11 Cases, for which Skadden seeks compensation in the net amount of $286,493.50. Skadden spent 43 of those hours, or $49,871.00 in fees, preparing this Final Fee Application as well as Skadden's Eleventh and Twelfth Monthly Fee Applications. During the Final Fee Period, including the Fourth Interim Fee Period, Skadden attorneys and paraprofessionals devoted a total of 11,472.70 hours to representing the Debtors in the Chapter 11 Cases, for which Skadden seeks compensation in the net amount of $13,116,169.50. Of the aggregate time expended, 2,269.00 hours were spent by partners, 467.00 hours were spent by counsels, 8,219.70 hours were spent by associates, and 517.00 hours were spent by client specialists and paraprofessionals. Schedules showing the name and position of each such partner, of counsel, counsel, associate, client specialist, and paraprofessional, together with that person's practice group, year of admission to the bar (if applicable), hours worked during both the Fourth Interim Fee Period and the Final Fee Period, and hourly billing rates, as well as Skadden's blended hourly rates for the Fourth Interim Fee Period and the Final Fee Period, are included at the front of this Final Fee Application pursuant to Local Bankruptcy Rule 2016-2.

29.     Skadden also incurred actual and necessary out-of-pocket expenses in the amount of (a) $245.93 in connection with the rendition of such services on behalf of the Debtors during the Fourth Interim Fee Period and (b) $155,578.59 in connection with the rendition of such services on behalf of the Debtors during the Final Fee Period, including the Fourth Interim Fee Period. Schedules showing total expenses during the Fourth Interim Fee Period and the Final Fee Period, respectively, for which reimbursement is sought are included at the front of this Final Fee Application pursuant to Local Bankruptcy Rule 2016-2.

## SUMMARY OF SERVICES RENDERED

30.     During the Final Fee Period, Skadden worked closely with the Debtors and the Debtors' other professionals to achieve the Debtors' objectives, including stabilizing the Debtors' business, marketing and consummating the Sale and realizing the resulting maximization of value. The services described herein have been directed towards those tasks necessary to fulfill the Debtors' fiduciary and statutory duties and to accomplish the Debtors' objectives. To meet the Debtors' needs, Skadden professionals provided multi-disciplinary services on a daily basis, working nights, weekends, and holidays as necessary, to research, draft, analyze, negotiate, and resolve numerous issues. Throughout this process, certain of the principal Skadden attorneys working on the Chapter 11 Cases were required to devote a substantial portion of their time to this engagement.

31.     Certain tasks were allocated to the Debtors' co-counsel Chipman Brown Cicero & Cole LLP ("**Chipman**") in an effort to efficiently—and less expensively—perform services that did not require Skadden's breadth and depth of experience, but that nonetheless needed to be performed as part of the Chapter 11 Cases. Accordingly, Skadden and Chipman sought to work with one another to manage any perceived conflicts and to lower overall cost to the estates by

13

allocating to Skadden the most complex work that demanded its unique expertise, while Chipman handled the remaining tasks more economically.

32.     At the commencement of the Chapter 11 Cases, Skadden created 39 different matter numbers to which its professionals billed their time.[5] Skadden kept a contemporaneous record of the time spent rendering services and separated tasks in billing increments of one-tenth of an hour. All of the services performed by Skadden have been legal in nature and necessary and appropriate for the effective administration of the Chapter 11 Cases.

33.     Skadden devoted approximately 57% of its time to the following matters, fees for each of which were greater than $1,000,000: (a) Asset Dispositions (General) and (b) Financing (DIP and Emergence).

34.     Skadden devoted approximately 25% of its time to the following matters, fees for each of which were between $500,000 and $1,000,000: (a) Employee Matters (General); (b) General Corporate Advice; (c) Employee Matters (Labor Unions); (d) Litigation (General); and (e) Business Operations / Strategic Planning.

35.     Skadden devoted approximately 9.8% of its time to the following matters, fees for each of which were between $250,000 and $500,000: (a) Vendor Matters; (b) Retention / Fee Matters (SASM&F); and (c) Creditor Meetings / Statutory Committees.

36.     Skadden devoted approximately 6% of its time to the following matters, fees for each of which were between $100,000 and $250,000: (a) Tax Matters; (b) Insurance; (c) Case Administration; (d) Intellectual Property; (e) Regulatory and SEC Matters; and (f) Nonworking Travel Time.

---

[5]    These matters to which Skadden professionals billed their time during the Final Fee Period are listed in the Compensation by Project Category table above.

37.     Skadden devoted approximately 2% of its time to the following matters, fees for each of which were between $25,000 and $100,000: (a) Retention / Fee Matters / Objections (Others); (b) Executory Contracts (Personalty); (c) U.S. Trustee Matters; (d) Automatic Stay (Relief Actions); and (e) Claims Admin. (General).

38.     Skadden devoted the remaining approximately 0.2% of its time to the following matters, fees for each of which were less than $25,000: (a) Leases (Real Property); (b) Environmental Matters; (c) Real Estate (Owned); (d) Utilities; (e) Asset Analysis and Recovery; (f) Reports and Schedules; and (g) Reorganization Plan / Plan Sponsors.

**I.     Matters over $1,000,000**

39.     During the Final Fee Period, Skadden professionals devoted significant time to various key matters, each of which had a time value of more than $1,000,000. These matters were as follows:

**A.     Asset Dispositions (General)
Amount Sought: $5,977,232.50**

40.     During the Final Fee Period, Skadden professionals advised the Debtors in connection with the Sale, including the marketing and auction of the Debtors' assets and closing of the sales of the Debtors' North American, Chinese, and Australian businesses. On May 13, 2022, the Debtors filed a motion to approve certain bidding and sale procedures (the "**Bidding Procedures**") in connection with the sale of certain of all the Debtors' assets [Docket No. 141] (the "**Sale Motion**"). Skadden professionals addressed and resolved numerous issues with respect to the Bidding Procedures and the Sale Motion with various parties-in-interest, including the U.S. Trustee [Docket No. 207], High Properties [Docket No. 204], and the Creditors' Committee [Docket No. 209]. Skadden professionals successfully secured the Bankruptcy Court's approval of the Bidding Procedures on May 31, 2022 [Docket No. 233].

41.     Both prior to and following the entry of the Bidding Procedures Order, Skadden professionals assisted the Debtors and their other advisors, including their investment banker Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**") with the marketing process for the Debtors' assets. Among other things, Skadden professionals negotiated confidentiality agreements with parties interested in participating in the Sale process. Skadden professionals also spent significant time assisting the Debtors in responding to due diligence requests from, and participating in diligence calls with, potential bidders.

42.     Further, and in preparation for the auction for the Debtors' assets (the "**Auction**"), Skadden professionals drafted and negotiated the terms of multiple purchase agreements for bidders acquiring varying asset pools and the exhibits and schedules related thereto. Skadden professionals also remained in constant communication with potential bidders, the Debtors' senior management, and the Debtors' other advisors, as well as various other key stakeholders including the Creditors' Committee, the Debtors' labor unions covering certain of their employees, the official committee of non-represented retirees (the "**Retiree Committee**"), contract and lease counterparties, and other interested parties, regarding the Auction and Sale process.

43.     The Debtors received various letters of intent, negotiated term sheets, and ultimately received five Qualified Bids (as defined in the Bidding Procedures) for certain of the Debtors' North American assets, two Qualified Bids for equity of the AFI China, and two Qualified Bids for substantially all of the assets of AFI Australia. Skadden professionals, in conjunction with the Debtors' other advisors, reviewed and evaluated the proposals and advised the Debtors regarding the Qualified Bids and the selection of the starting bids for the Auction. Skadden professionals spent significant time responding to inquiries and information requests from Qualified Bidders (as defined in the Bidding Procedures) in an effort to ensure the best results at

the Auction. Skadden professionals also updated and collaborated with the consultation parties under the Bidding Procedures throughout the Sale process.

44.    Skadden hosted and assisted the Debtors in conducting the Auction over late June and early July 2022. In addition to coordinating the multi-day Auction process, Skadden professionals spent considerable time facilitating negotiations among the Debtors, the Qualified Bidders, and the lenders (the "**Prepetition Lenders**" or the "**DIP Lenders**") under the Debtors' prepetition credit facilities (the "**Prepetition Credit Facilities**") and debtor-in-possession financing facilities, and advising the Debtors with respect to such negotiations. Following the selection of the successful bidders, Skadden professionals spent significant time negotiating and revising the transaction documentation, including the purchase agreements, schedules, exhibits, and proposed orders approving the sales. Skadden also prepared and filed documents seeking approval of the sale transactions, including an omnibus reply in support of the sale transactions [Docket No. 538].

45.    Leading up to the sale hearing on July 12, 2022 (the "**Sale Hearing**"), Skadden professionals spent significant time negotiating with numerous parties to resolve informal and formal objections to the Sale. Just prior to the Sale Hearing, the Debtors had two remaining outstanding objections to the sale from Emerald Kalama Chemical, LLC, ("**Emerald**") [Docket No. 423] and from Givens, Inc. ("**Givens**") [Docket No. 413]. Skadden was ultimately successful in resolving consensually these and all other outstanding objections to the Sale by the time of the Sale Hearing, resulting in a consensual hearing. As a result of these efforts, Skadden secured this Court's approval at the Sale Hearing of each of the proposed sales of the Debtors' North American, Chinese, and Australian assets.

46.     Following the Bankruptcy Court's approval of the Sale, Skadden professionals continued to advise the Debtors in connection with the closing of each of the sale transactions comprising the Sale, including participating in regular meetings with the buyers and their respective counsel with respect to the closings and related tasks, drafting necessary documentation to effectuate the closings, and advising on the purchase agreements. As a result of these efforts, the North America Sale closed on July 25, 2022, the China Sale closed on August 1, 2022, and the Australia Sale closed on August 23, 2022.

47.     Following the closing of the North America Sale, Skadden professionals also negotiated certain post-closing matters, including the treatment of certain North American assets, such as certain Canadian accounts receivable, under the applicable transaction documents. Skadden professionals negotiated such matters with the counterparties to the North America Sale and drafted documentation required to effect the parties' desired treatment of such North American assets, including the negotiation and preparation of an amendment to the purchase agreement for the North America Sale to address the treatment of Canadian and U.S. collateral assets.

48.     In addition, in connection with the Sale, the Debtors established numerous escrow accounts to, among other things, hold deposits from potential bidders in the auction process, set aside funds to facilitate settlement of disputes with post-petition creditors, and pay budgeted expenses incurred by the Debtors. Following the Sale, Skadden professionals drafted the documentation necessary to authorize the release of funds from the Debtors' escrow accounts to the proper recipients.

49.     In connection with this matter, Skadden professionals devoted a total of 4,897.10 hours, for which compensation is sought in the amount of $5,977,232.50.

**B.      Financing (DIP and Emergence)**
**Amount Sought: $1,498,280.50**

18

50.     During the Final Fee Period, Skadden professionals devoted a significant amount of time assisting the Debtors in negotiating debtor-in-possession ("**DIP**") financing to ensure the Debtors' ability to pursue the Sale process while maintaining ordinary course operations to preserve transactional optionality. The Skadden team provided extensive advice and services in connection with negotiating, drafting, and revising documents and interim and final orders related to authorization for the use of cash collateral and approval of DIP financing.

51.     Specifically, on the Petition Date, Skadden professionals filed on behalf of the Debtors a motion requesting orders on an interim and final basis seeking approval of a priming DIP financing facility offered by JMB Capital Partners Lending, LLC ("**JMB**"). Recognizing that priming DIP financing would, in all likelihood, lead to contentious, costly, and distracting litigation with the Prepetition Lenders that could persist throughout the Chapter 11 Cases, Skadden professionals continued negotiating with the Prepetition Lenders in an attempt to identify a consensual DIP financing arrangement that would permit the Debtors to avoid immediately winding down operations. Among other things, these discussions included an all-day, in-person meeting in New York City on May 12, 2022.

52.     While these discussions were ongoing, Skadden professionals negotiated with the Prepetition Lenders to agree on a preliminary order, and, as discussions continued, a second preliminary order, providing the Debtors with the ability to use cash collateral to make certain critical vendor payments to preserve ordinary course operations in the absence of a final DIP financing arrangement. The Court entered these orders at Docket Numbers 104 and 139, respectively.

53.     The Debtors and Skadden professionals were ultimately successful in their vigorous negotiations with the Prepetition Lenders. On May 16, 2022, Skadden professionals filed on behalf

of the Debtors a supplemental motion to approve a consensual DIP financing arrangement with the Prepetition Lenders (the "**Consensual DIP Financing**") including, among other things, (a) consent for the Debtors' use of cash collateral, (b) a senior secured super-priority asset-based revolving credit facility in aggregate principal amount of $90 million in revolving commitments, providing the Debtors with approximately $12 million net new money (the "**DIP Revolver Facility**"), and (c) an advance term loan facility of approximately $12 million net new money (the "**DIP Term Loan Facility**" and, together with the DIP Revolver Facility, the "**DIP Facilities**") [Docket No. 146] (the "**Consensual DIP Motion**"). This process involved the negotiation and drafting of a supplemental motion, supplemental declarations, a single form of DIP order, and two separate DIP credit agreements.

54.     The Debtors received a variety of formal and informal comments from several stakeholders, including the U.S. Trustee, Flexport International, LLC, Givens, Inc., JMB, and High Properties, on the Consensual DIP Motion's proposed interim order. Skadden professionals worked with the Debtors, the DIP Lenders, and these various stakeholders to address and incorporate these comments in a revised form of interim order. As a result of Skadden's efforts, the Court entered an order reflecting the parties' agreement and approving the relief requested on an interim basis [Docket No. 169] (the "**Interim DIP Order**").

55.     Following entry of the Interim DIP Order, Skadden professionals worked with the Debtors to address a limited objection filed by Givens, Inc. [Docket No. 238] and to resolve comments from other parties-in-interest regarding the form of final DIP order. As part of this process, Skadden professionals prepared a reply to objections anticipated from such parties; however, Skadden professionals were able to come to agreement with these parties following

consistent negotiations. As a result of these efforts, the Court ultimately entered an order approving the Consensual DIP Financing on a final basis [Docket No. 311] (the "**Final DIP Order**").

56.     Skadden professionals continued to work to ensure that the Debtors had access to cash collateral sufficient to maintain operations as they sought to consummate the Sale process. After the expiration of the DIP Facilities on July 7, 2022, Skadden professionals negotiated with the DIP Lenders to amend the budget under the DIP Facilities to maintain access to cash collateral and to establish funding for winding down the Chapter 11 Cases. To this end, Skadden filed on behalf of the Debtors a proposed supplement to the Final DIP Order (the "**Supplemental Final Order**") reflecting agreed terms for a wind-down budget [Docket No. 547].

57.     Skadden professionals worked with the Debtors to incorporate comments from the U.S. Trustee and to negotiate resolutions to objections to the Supplemental Final Order filed by several parties in interest. On July 19, 2022, the Court entered the Supplemental Final Order [Docket No. 581].

58.     Following the closing of the Sale, Skadden professionals worked closely with the Debtors, the Debtors' other advisors, and the advisors to the DIP Lenders to apply the sale proceeds from the North America Sale, China Sale, and Australia Sale according to the terms of the Consensual DIP Financing, including preparing and coordinating the various escrow, paydown, and release documents related thereto. Skadden professionals also coordinated the financing-related closings sets and filings of appropriate documentation with relevant authorities, including UCC lien release documentation.

59.     In addition to the foregoing efforts, throughout the Chapter 11 Cases, Skadden professionals worked closely with the Debtors, the Debtors' other advisors, and the advisors to the DIP Lenders to ensure that the Debtors and the DIP Lenders adhered to the terms of the DIP

Facilities. This included consistent communications with all parties as well as contingency planning, such as the preparation of legal letters, motions, and related research.

60.    In connection with this matter, Skadden professionals devoted a total of 1,231.90 hours, for which compensation is sought in the amount of $1,498,280.50.

**II.    Matters Between $500,000 and $1,000,000**

    **A.    Employee Matters (General)**
          **Amount Sought: $922,307.00**

61.    As of the Petition Date, the Debtors had approximately 1,216 employees. During the Final Fee Period, Skadden provided the Debtors with legal services and advice in connection with the various employee issues that arose during the pendency of the Chapter 11 Cases, starting with filing a motion on the Petition Date seeking to pay certain prepetition employee wage and benefit obligations and to continue certain employee benefit programs in the ordinary course [Docket No. 10] (the "**Wages Motion**"). Prior to the hearing to approve the Wages Motion on an interim basis, the Debtors received informal comments from the U.S. Trustee. Skadden professionals assisted the Debtors in addressing and consensually resolving the U.S. Trustee's comments. Skadden professionals successfully secured the Court's approval of the Wages Motion on an interim basis as part of the Debtors' "first-day" relief [Docket No. 91]. Prior to the hearing to approve the Wages Motion on a final basis, the Debtors received informal comments to the proposed final order from one of the Debtors' insurance carriers (the "**Insurance Carrier**"). Skadden professionals assisted the Debtors in addressing and consensually resolving the Insurance Carrier's comments, and successfully secured the Court's approval of the Wages Motion on a final basis as part of the Debtors' "second-day" relief [Docket No. 259].

62.    Skadden professionals also devoted time to advising the Debtors on employee-related issues that arose in connection with the Asset Purchase Agreement and the sale of

substantially of their assets. This included a potential objection by the Pension Benefit Guaranty

Corporation ("**PBGC**") to the sale transactions. Skadden professionals, together with certain of

the Debtors' other professionals, successfully negotiated a settlement with the PBGC in resolution

of their potential objection to the Sale.

63.     Skadden professionals also assisted the Debtors with preparing and issuing notices

to their employees under the federal Worker Adjustment and Retraining Notification ("**WARN**")

Act and state analogues on three separate occasions in May, June, and July, respectively. As a

result of the issuance of the WARN notices, the Illinois Department of Labor ("**IDOL**") initiated

a WARN investigation that required the Debtors to respond to records requests. Skadden

professionals assisted the Debtors in gathering and preparing the responsive documents and

communicating with the IDOL to address and seek to resolve the investigation.

64.     In addition, Skadden provided general advice to the Debtors regarding other

employee matters in connection with the Chapter 11 Cases including (a) benefits, (b) severance

plans and agreements, and (c) employee communications.

65.     In connection with this matter, Skadden professionals devoted a total of 957.30

hours, for which compensation is sought in the amount of $922,307.00.

**B.      General Corporate Advice
         Amount Sought: $710,486.50**

66.     During the Final Fee Period, Skadden professionals assisted and advised the

Debtors and their Board of Directors (the "**Board**") with respect to various corporate governance

matters. This included advising on issues relating to the (a) proposed Sale, (b) board resolutions,

press releases, and related disclosures, (c) potential litigation, and (d) corporate strategy with

respect to the progression of the Chapter 11 Cases and providing updates regarding the same. In

particular, following the closings of the Sale, Skadden professionals advised the Board regarding

the Debtors' post-closing obligations in connection with the Sale and the status of the Debtors'

Chapter 11 Cases.

67.     Over the course of the Final Fee Period, Skadden professionals regularly prepared

presentation decks and other materials to present to the Debtors' management team and Board to

provide updates on the status of the Chapter 11 Cases and also regularly participated in telephonic

Board meetings to discuss key issues in the Chapter 11 Cases including, among other things, the

first- and second-day pleadings, the Sale, the various settlements in the Chapter 11 Cases,

employee issues, and related relief.

68.     Skadden professionals also supported Riveron Management Services, LLC, which

provided interim management services to the Debtors, in connection with various wind-down

activities of the Debtors.

69.     In connection with this matter, Skadden professionals devoted a total of 567.00

hours, for which compensation is sought in the amount of $710,486.50.

### C.      Employee Matters (Labor Unions)
####        Amount Sought: $634,416.50

70.     As of the Petition Date, approximately 277 of the Debtors' employees (the

"**Represented Employees**") were represented by two unions—the United Steelworkers ("**USW**")

and the International Association of Machinists and Aerospace Workers ("**IAM**" and together with

USW, the "**Unions**"). The Debtors had three collective bargaining agreements with the Unions

(the "**CBAs**") (two CBAs with USW and one CBA with IAM) that covered a wide variety of terms

related to their Union employees, including wages, holiday and vacation policies, contributions to

pension plans, health and welfare plans, and retiree benefits. Because it was unclear whether the

Sale process would yield bids that would preserve the CBAs, Skadden professionals assisted the

Debtors and their other professionals, including their outside labor counsel Barnes & Thornburg

LLP ("**Barnes & Thornburg**") with preparing and delivering a proposal to the Unions pursuant to Bankruptcy Code section 1113 on May 20, 2022, to reject each CBA that was not assumed by a successful bidder in the Sale process. On June 8, 2022, Skadden professionals assisted the Debtors in filing a motion under section 1113 of the Bankruptcy Code for authorization to reject any CBA that was not assumed by a successful bidder [Docket No. 321] (the "**1113 Motion**").

71.    The Unions also represented the retired employees and their spouses and dependents covered by each Union's respective CBAs. In line with their concerns regarding assumption of the CBAs, the Debtors were similarly unsure whether the Sale process would yield any successful bid that would assume the Debtors' retiree benefit programs (collectively, the "**Retiree Benefits**"). In the absence of such a bid, the Debtors believed that their estates would not be able to afford the ongoing costs associated with such programs. Accordingly, on or around June 8, 2022, Skadden assisted the Debtors with preparing and delivering a proposal to the Unions under Bankruptcy Code section 1114 to discontinue all Retiree Benefits not assumed by a successful bidder in connection with the Sale.

72.    Both prior to and following the delivery of the proposals under Bankruptcy Code sections 1113 and 1114, Skadden worked with the Debtors and their other professionals, including Barnes & Thornburg, to provide information to, respond to various information and diligence requests from, and engage in discussions and negotiations with the Unions to consensually reach an agreement regarding the treatment of the CBAs and Retiree Benefits with respect to Union retirees. The Debtors were ultimately successful in reaching a settlement [Docket No. 529] (the "**Union Settlement**") with the Unions, which resolved the 1113 Motion and 1114 Motion, as well as the Unions' objections to the Debtors' Sale Motion and the Debtors' motion to approve a key employee retention plan [Docket No. 249] (the "**KERP Motion**").

25

73.     In connection with this matter, Skadden professionals devoted a total of 569.00 hours, for which compensation is sought in the amount of $634,416.50.

**D.     Litigation (General)
        Amount Sought: $523,819.50**

74.     During the Final Fee Period, Skadden professionals spent considerable time preparing for actual and threatened litigation and responding to discovery requests. Among other things, Skadden professionals extensively prepared the Debtors' witnesses with respect to the first-day relief and relief sought in the Interim DIP Order in advance of the hearings to consider the same. As described further herein, the Debtors also prepared witnesses and substantial materials in connection with anticipated litigation from the Unions and the Retiree Committee (as defined below) regarding the relief sought in the 1113 Motion and the 1114 Motion, prior to the settlements with the Unions and Retiree Committee.

75.     Skadden professionals also advised the Debtors in connection with various other litigation issues that arose during the Chapter 11 Cases, including, among other things, (a) assessing and resolving actual and potential issues related to the Sale process and the formal and informal objections from other contract counterparties and other parties-in-interest; and (b) evaluating litigation strategy in connection with obtaining certain necessary consents with respect to the use of certain intellectual property necessary to close the Sale, including seeking a temporary restraining order with respect thereto.

76.     Further, Skadden professionals advised the Debtors in connection with responding to expedited discovery requests from the Unions and Retiree Committee in connection with such parties' comprehensive information requests regarding the Sale, the CBAs, and the Retiree Benefits. Skadden professionals first negotiated confidentiality and discovery terms and drafted an agreed protective order with the relevant parties-in-interest to protect the confidentiality of

proprietary and sensitive information. Skadden professionals then managed document review and productions responsive to the Unions' and Retiree Committee's requests, subject to such agreed terms.

77.     Because of the overlapping nature of litigation matters (with respect to other matter categories), to the extent time spent on litigation-related issues was not billed to this matter, time spent on such matters was billed to the specific matter that was the subject of the litigation, such as Asset Dispositions (General), Creditor Meetings / Statutory Committees, Employee Matters (General), Executory Contracts (Personalty), Financing (DIP and Emergence), and others, as applicable.

78.     In connection with this matter, Skadden professionals devoted a total of 397.70 hours, for which compensation is sought in the amount of $523,819.50.

> **E.     Business Operations / Strategic Planning**
>      **Amount Sought: $505,942.50**

79.     During the Final Fee Period, Skadden professionals spent time on many matters related to the Debtors' business operations as well as strategic planning relating to the Chapter 11 Cases. Skadden professionals collaborated with the Debtors' management team, co-counsel, and other advisors to develop strategies with respect to a variety of potential case scenarios and to keep the various teams appraised of case developments. Among other things, Skadden professionals spent significant time preparing case strategy with respect to the relief sought at the first- and second-day hearings, which sought to sought to stabilize the Debtors' operations and were designed to facilitate a smooth transition into chapter 11 and ease the strain on the Debtors' business as a consequence of the filing of the Chapter 11 Cases.

80.     Such preparation included reviewing and analyzing comments and objections from the U.S. Trustee, the Committee, and other parties-in-interests regarding the first- and second-day

relief, responding to and negotiating diligence requests from such parties, strategizing internally and with the Debtors' other advisors with respect to the objections and related go-forward scenarios, and continuously updating the Debtors' management team with respect to the same. Time billed to this matter also includes preparation for, attendance, and representation of the Debtors at the first- and-second day hearings, each of which involved multiple complex issues.

81.    Skadden professionals also assisted the Debtors with the impact of the Chapter 11 Cases on their debtor-in-possession and go-forward business operations, including advice with respect to strategic planning, and review and analysis of certain manufacturing, supply, licensing, and sales issues, as well as restructuring issues regarding the Debtors' international subsidiaries.

82.    Finally, Skadden advised the Debtors with respect to a creditor's motion to convert the Chapter 11 Cases to cases under chapter 7 and potential responses thereto, and Skadden assisted with drafting the Debtors' competing motion to dismiss the Chapter 11 Cases pursuant to a structured dismissal. Skadden also provided guidance regarding the effect of any such conversion or structured dismissal.

83.    In connection with this matter, Skadden professionals devoted a total of 427.8 hours, for which compensation is sought in the amount of $505,942.50.

## III.    Matters Between $250,000 and $500,000

84.    During the Final Fee Period, Skadden professionals devoted significant time to various key matters, each of which had a time value of between $250,000 and $500,000. These matters were as follows:

### A.    Vendor Matters
### Amount Sought: $475,311.00

85.    To maintain the Debtors' ability to operate and provide a continuous flow of products to the Debtors' customers during the Chapter 11 Cases, Skadden professionals sought

28

and received first-day relief allowing payments to those vendors that posed the greatest risk of interruption to the Debtors' supply chain [Docket No. 283]. Thereafter, Skadden professionals helped to communicate and implement this relief and to respond to and track vendor inquiries regarding the same, including reclamation demands, requests for "critical vendor" treatment and payment, advising the Debtors with respect to their negotiation of "critical vendor" agreements, issues with payment terms, review of contractual provisions, and drafting critical vendor agreements.

86.     As the Chapter 11 Cases progressed, Skadden professionals continued to communicate with key vendors and track inquiries and payments in connection with the closing of the Sale transactions and advised the Debtors on free trade zone and other duty-related issues.

87.     In connection with this matter, Skadden professionals devoted a total of 432.90 hours, for which compensation is sought in the amount of $475,311.00.

**B.      Retention / Fee Matters (SASM&F)
        Amount Sought: $469,216.50**

88.     At the inception of the Chapter 11 Cases, Skadden professionals prepared and filed the Retention Application.

89.     As discussed above, in order to comply with the Interim Compensation Procedures, Skadden professionals prepared and filed twelve monthly fee applications [Docket Nos. 389, 618, 705, 833, 929, 999, 1044, 1091, 1223, 1350, 1366, and 1402], as well as the First Interim Fee Application [Docket No. 737], Second Interim Fee Application [Docket No. 1022], Third Interim Fee Application [Docket No. 1269], and this Final Fee Application. Skadden professionals also dedicated substantial time to preparing for the hearing on, and resolving U.S. Trustee comments to, the First Interim Fee Application.

90.     Skadden also maintained and updated a list of parties-in-interest in the Chapter 11 Cases throughout the Final Fee Period to comply with the ongoing disclosure requirements of the Bankruptcy Code and the Bankruptcy Rules, which it also shared with the Debtors' other professionals. Skadden professionals conducted further queries of Skadden's client databases during the Final Fee Period to identify relevant relationships to the Debtors, their affiliates, and other parties-in-interest. Skadden professionals also prepared a supplemental declaration discussing certain relevant relationships and filed such declaration with the Court on August 12, 2022 [Docket No. 695].

91.     Skadden's work on this matter lasted into the Post-Conversion Period as Skadden spent time preparing this Final Fee Application as well as the Eleventh and Twelfth Monthly Fee Applications.

92.     In connection with this matter, Skadden professionals devoted a total of 495.00 hours, for which compensation is sought in the amount of $469,216.50.

### C.     Creditor Meetings / Statutory Committees
####       Amount Sought: $350,225.00

93.     On May 18, 2022, the U.S. Trustee filed a notice appointing the Creditors' Committee [Docket No. 175]. During the Final Fee Period, Skadden professionals worked with the Creditors' Committee's professionals to negotiate and ultimately come to agreement on many issues in the Chapter 11 Cases. The Debtors conferred with the Creditors' Committee throughout the Final Fee Period on issues related to DIP financing, the Sale process, the Retiree Committee Settlement (as defined below), resolving retiree claims, and various other issues. In connection therewith, Skadden professionals, along with the Debtors' other retained professionals, prepared for and attended meetings with Creditors' Committee professionals and responded to various information requests.

94.     To further consideration of the treatment of their Retiree Benefits in connection with the Sale process, on May 13, 2022, the Debtors filed a motion seeking an order (the "**Retiree Committee Appointment Order**") authorizing the U.S. Trustee to appoint an official committee of retirees who are not represented by the Debtors' Unions [Docket No. 144]. Following a hearing on June 3, 2022, the Court entered the Retiree Committee Appointment Order. As noted above, the Debtors also filed the 1114 Motion on June 8, 2022, in preparation for a scenario where the Retiree Benefits would not be assumed by a successful bidder in the Sale Process. Skadden professionals spent significant time preparing the 1114 Motion and analyzing and discussing the effect of the 1114 Motion on the retirees and the estate.

95.     Following entry of the Retiree Committee Appointment Order, Skadden professionals aided the U.S. Trustee with compiling materials to assist in the solicitation of such committee. To that end, on June 17, 2022, the U.S. Trustee filed a notice appointing a committee of non-represented retirees (the "**Retiree Committee**") [Docket No. 383]. Following formation of the Retiree Committee, Skadden professionals assisted the Debtors with preparing and delivering a proposal to the Retiree Committee to discontinue all Retiree Benefits not assumed by a successful bidder in the Sale process.

96.     Skadden worked with the Debtors and other professionals to provide information to, respond to numerous information requests from, and engage in discussions and negotiations with, the Retiree Committee to reach a consensual resolution with the Retiree Committee regarding the treatment of the Retiree Benefits. The Debtors were ultimately successful in reaching a settlement [Docket No. 569] (the "**Retiree Committee Settlement**") with the Retiree Committee, which resolved the 1114 Motion, as well as the Retiree Committee's objection to the KERP Motion. Following the approval of the Retiree Committee Settlement, Skadden professionals spent

considerable time assisting the Debtors with implementing the terms of the Retiree Committee Settlement and finalizing such mechanics with the Retiree Committee.

97.     Following the implementation of the Retiree Committee Settlement, Skadden professionals also assisted the Debtors with responses to various retiree claims as the Final Fee Period continued.

98.     In connection with this matter, Skadden professionals devoted a total of 300.20 hours, for which compensation is sought in the amount of $350,225.00.

**IV.     Matters Between $100,000 and $250,000**

99.     During the Final Fee Period, Skadden professionals devoted significant time to various key matters, each of which had a time value of between $100,000 and $250,000. These matters were as follows:

     **A.     Tax Matters**
              **Amount Sought: $178,008.50**

100.     Skadden professionals worked to preserve tax value, minimize tax liability, and maximize estate value through efficient tax strategies. In particular, Skadden professionals spent substantial time evaluating the potential tax implications of the Sale throughout all stages of the process, including evaluating purchase agreements and other transaction documentation, strategizing regarding tax issues in the various jurisdictions implicated by the Sale and resolving certain state tax proceedings, advising the Debtors with respect to the same, and coordinating with the Debtors' other advisors and the transaction parties and their advisors with respect to such issues.

101.     In connection with this matter, Skadden professionals devoted a total of 135.60 hours, for which compensation is sought in the amount of $178,008.50.

**B.      Insurance**
**Amount Sought: $152,135.00**

102.    During the Final Fee Period, Skadden professionals assisted the Debtors with evaluating and addressing various issues in connection with their insurance policies. Among other things, Skadden professionals sought and ultimately received approval to pay outstanding amounts due under and to continue the Debtors' existing insurance policies as part of the Debtors' first-day relief. Skadden professionals also assisted the Debtors in negotiating various extensions, stipulations, and wind-down coverage with respect to certain of the Debtors' then-expiring insurance policies, including negotiating agreements with respect thereto with counsel to certain of the Debtors' insurance providers. In addition, Skadden professionals advised the Debtors with regard to post-Sale insurance issues and participated in negotiating and settling related workers' compensation claims.

103.    Skadden's work on this matter lasted into the Post-Conversion Period as Skadden spent time responding to information requests from the Trustee regarding the Debtors' insurance policies.

104.    In connection with this matter, Skadden professionals devoted a total of 115.70 hours, for which compensation is sought in the amount of $152,135.00.

**C.      Case Administration**
**Amount Sought: $141,934.00**

105.    Skadden professionals devoted resources to case administration matters and worked with the Debtors' management and other professionals to ensure that the Debtors conducted their affairs in accordance with the Bankruptcy Code and applicable non-bankruptcy law. Moreover, Skadden professionals communicated both internally and with Debtors' management, co-counsel, and other advisors, in order to keep the various teams apprised of case developments and reduce expenses by ensuring that professional efforts were not duplicated.

Skadden professionals also devoted time coordinating required notices and mailings, preparing case calendars, files, and task lists, and monitoring the Court's docket.

106.    In connection with this matter, Skadden professionals devoted a total of 261.90 hours, for which compensation is sought in the amount of $141,934.00.

### D.    Intellectual Property
   Amount Sought: $136,870.50

107.    During the Final Fee Period, Skadden professionals assisted the Debtors with evaluating various issues regarding their intellectual property in connection with the Sale. Skadden professionals assisted in reviewing the Debtors' intellectual property assets, licenses, and other arrangements as part of the evaluation of potential bids and, following the approval of the Sale, the transaction documentation process for closing. Skadden professionals also addressed issues in connection with obtaining necessary consents with respect to certain intellectual property necessary to close the Sale.

108.    In connection with this matter, Skadden professionals devoted a total of 113.50 hours, for which compensation is sought in the amount of $136,870.50.

### E.    Regulatory and SEC Matters
   Amount Sought: $128,280.00

109.    Skadden professionals spent time assisting the Debtors with various regulatory matters. In particular, Skadden professionals analyzed and provided advice to the Debtors regarding various securities, antitrust, and other regulatory laws in connection with the Sale process and with respect to evaluating potential bidders, and thereafter in anticipation of the closing of the various transactions comprising the Sale.

110.    Skadden professionals also advised the Debtors generally regarding competition matters, as well as the Debtors' required filings with the U.S. Securities and Exchange Commission

and other regulators, and provided other advice on regulatory and public relations reporting of significant events in the Chapter 11 Cases.

111.    In connection with this matter, Skadden professionals devoted a total of 110.90 hours, for which compensation is sought in the amount of $128,280.00.

### F.    Nonworking Travel Time
### Amount Sought: $104,181.50

112.    The Debtors retained an engagement team of Skadden professionals residing in Chicago, Wilmington, and Palo Alto. The engagement team drew on the experience and talent of a number of professionals from Skadden's global organization in representing the Debtors across a broad range of complex legal matters, including mergers and acquisitions, tax, labor, litigation, and restructuring. Skadden professionals traveled as necessary for, among other things, the Auction, to coordinate in connection with court hearings, or to meet with the Debtors and other parties-in-interest.

113.    Due to the fluid state of negotiations surrounding the Auction, Skadden professionals facilitating these discussions often traveled frequently and on short notice for client and constituent meetings and continued court hearings. Skadden professionals who spent time traveling, but not otherwise working, allocated their time to this billing category, which, as reflected in the tables above, was billed at 50% of standard hourly rates.

114.    In connection with this matter, Skadden professionals devoted a total of 155.10 hours, for which compensation is sought in the amount of $104,181.50.

## V.    Matters Between $25,000 and $100,000

115.    During the Final Fee Period, Skadden professionals devoted significant time to various key matters, each of which had a time value of between $25,000 and $100,000. These matters were as follows:

A.    **Retention / Fee Matters / Objections (Others)**
**Amount Sought: $90,731.00**

116.    During the Final Fee Period, Skadden professionals assisted in preparing, reviewing, and filing retention applications for certain of the Debtors' other professionals, including with respect to the Debtors' financial advisor, investment banker, claims agent and certain estate and committee professionals. Skadden also evaluated the professional fee escrow and wind-down budget to coordinate releases from the same. Skadden's work on this matter lasted into the Post-Conversion Period as Skadden spent time with respect to the Trustee's requests seeking information related to unpaid invoices and the professional fee escrow account balance.

117.    In connection with this matter, Skadden professionals devoted a total of 91.90 hours, for which compensation is sought in the amount of $90,731.00.

B.    **Executory Contracts (Personalty)**
**Amount Sought: $84,388.00**

118.    Skadden professionals advised the Debtors with respect to the Debtors' review of their executory contracts, focusing primarily on the legal aspects surrounding assumption and cure. The Bidding Procedures Order set deadlines by which the Debtors were required to provide notice of proposed assumption and cure amounts for contract and lease counterparties, and Skadden professionals assisted the Debtors in preparing and filing such schedules.

119.    Thereafter, Skadden assisted the Debtors and their other advisors, including Chipman (being mindful not to duplicate efforts), with responding to and resolving the various informal comments, inquires, and reconciliations, as well as formal objections, received from contract counterparties to the assumption and assignment of their executory contracts. As a result of their efforts, Skadden professionals were able to assist the Debtors in consensually resolving or mooting many of the formal and informal objections to assumption or cure.

120.    In connection with this matter, Skadden professionals devoted a total of 79.80 hours, for which compensation is sought in the amount of $84,388.00.

**C.    U.S. Trustee Matters**
**Amount Sought: $40,587.00**

121.    During the Final Fee Period, Skadden professionals spent time coordinating with the U.S. Trustee with respect to the various relief sought in the Chapter 11 Cases, including sharing drafts of proposed pleadings, reviewing comments, corresponding regarding informal and formal objections, and preparing for the statutory meeting of creditors.

122.    In connection with this matter, Skadden professionals devoted a total of 45.00 hours, for which compensation is sought in the amount of $40,587.00.

**D.    Automatic Stay (Relief Actions)**
**Amount Sought: $27,130.50**

123.    During the Final Fee Period, Skadden professionals spent time addressing issues related to the automatic stay.

124.    In connection with this matter, Skadden professionals devoted a total of 34.30 hours, for which compensation is sought in the amount of $27,130.50.

**E.    Claims Admin. (General)**
**Amount Sought: $25,316.00**

125.    During the Final Fee Period, Skadden professionals spent time addressing issues related to claims administration.

126.    In connection with this matter, Skadden professionals devoted a total of 28.40 hours, for which compensation is sought in the amount of $25,316.00.

**VI.    Matters Under $25,000**

127.    During the Final Fee Period, Skadden also devoted time to other matters that had a time value of less than $25,000. These matters were as follows: a) Leases (Real Property)

37

($8,747.50); (b) Environmental Matters ($7,878.50); (c) Real Estate (Owned) ($7,497.00); (d)

Utilities ($1,687.00); (e) Asset Analysis and Recovery ($1,606.50); (f) Reports and Schedules

($1,473.50); and (g) Reorganization Plan / Plan Sponsors ($980.00).

**REASONABLENESS OF FEES AND DISBURSEMENTS**

128.    Bankruptcy Code section 330 authorizes the Court to award "reasonable

compensation for actual, necessary services rendered by the . . . professional person." 11 U.S.C.

§ 330. In order to evaluate a request for allowance of fees by a professional person, a court must

determine whether the services rendered were actual and necessary and the fees requested are

reasonable. Skadden respectfully submits that its request for final award of compensation for the

Final Fee Period satisfies that standard.

129.    In accordance with the factors enumerated in 11 U.S.C. § 330, the amount requested

herein by Skadden is fair and reasonable in light of (a) the nature and complexity of the Chapter 11

Cases, (b) the time and labor required to effectively represent the Debtors, (c) the nature and extent

of the services rendered, (d) Skadden's experience, reputation, and ability, (e) the value of

Skadden's services, and (f) the cost of comparable services outside of cases under the Bankruptcy

Code.

**I.    Nature and Complexity of the Chapter 11 Cases, Time and Labor Involved, and Extent of Services Rendered**

130.    As discussed herein, the Chapter 11 Cases were complex and presented a unique

set of circumstances. The nature and complexity of the Chapter 11 Cases required Skadden to

develop case management and staffing solutions to enhance efficiency. Skadden assisted the

Debtors by employing a streamlined case management structure that generally consisted of small,

core teams and assigned discrete tasks to other attorneys, all with the goal of avoiding duplicative

and unnecessary work. Moreover, Skadden's efforts have been important in promptly and

38

consensually resolving the vast majority of disputes that arose during the Final Fee Period and in preserving value. Indeed, Skadden and the Debtors' other professionals were able to secure a prompt and successful going-concern sale of substantially all of the Debtors' assets, maximizing value for their estates and creditors.

131.    Given the complexity of the Chapter 11 Cases, the expedited timetable involved, and the variety of issues that arose in the Chapter 11 Cases, there were circumstances where a number of Skadden professionals had to be present at, and to participate in, discussions, negotiations, team meetings, and court hearings. Skadden believes that it has, through the narratives contained in this Final Fee Application and the time entries attached to each of the previously filed monthly fee applications [Docket Nos. 389, 618, 705, 833, 929, 999, 1044, 1091, 1223, 1350, 1366, and 1402], articulated specific reasons for attendance and participation by multiple attorneys on such occasions.

## II.    Experience of Skadden

132.    The experience of Skadden also benefited the Debtors' estates. Skadden is among the world's largest, most experienced firms. As set forth more fully in the Retention Application, Skadden's restructuring attorneys and attorneys from other practice areas have extensive knowledge and experience in dealing with the fast-paced needs of similar chapter 11 cases. Accordingly, Skadden's depth of experience in chapter 11 matters ensured that pressing matters were addressed promptly.

## III.    Comparable Services

133.    An award of compensation also must be based on the cost of comparable services other than in a case under the Bankruptcy Code. Skadden's rates are consistent with rate structures charged to other clients in bankruptcy and non-bankruptcy matters and with customary compensation charged by comparably skilled practitioners in non-bankruptcy engagements.

Disclosures related to Skadden's rate structure are attached hereto as **Exhibit A**. Moreover, Skadden's rate structure was disclosed clearly in its Retention Application, which the Court approved. The amounts sought by Skadden are consistent with the fees, charges, and disbursements incurred in other chapter 11 cases of similar size, complexity, and duration by Skadden and its peer firms. Accordingly, the cost of comparable services supports the Application, and the services performed during the Final Fee Period warrants the allowance of compensation, particularly in view of the results achieved.

## BUDGET AND STAFFING PLAN

134.    Attached hereto as **Exhibit A** is a summary of blended hourly rates for Firm timekeepers who billed to (a) non-bankruptcy matters and (b) the Debtors.

135.    Attached hereto as **Exhibit B** is Skadden's staffing plan for the Final Fee Period.

136.    Attached hereto as **Exhibit C** is a budget for Skadden for the Final Fee Period.

## ALLOWANCE OF COMPENSATION

137.    Because of the benefits realized by the Debtors, the nature of the Chapter 11 Cases, the standing at the bar of the attorneys who have rendered services, the amount of work done, the time consumed, the skill required, and the contingent nature of the compensation, Skadden requests (a) interim allowance and approval of $132,340.00 in compensation for professional services rendered to the Debtors during the Third Interim Period, (b) interim allowance and approval of $286,493.50 in compensation for services rendered during the Fourth Interim Fee Period, including $49,871.00 in compensation for services rendered during the Post-Conversion Period in conjunction with preparing this Final Fee Application, Skadden's Eleventh and Twelfth Monthly Fee Applications, and responding to the Trustee's information requests, and (c) final allowance and approval of compensation for professional services in the amount of $13,116,169.50 for the Final Fee Period. Complete descriptions of the time detail for services rendered by Skadden

40

professionals during the First, Second, Third, and Fourth Interim Fee Periods are attached hereto as **Exhibits D**, **E**, **F**, and **G** respectively. Additionally, tables summarizing the compensation sought for the Final Fee Period are included at the front of this Final Fee Application. As part of this Final Fee Application, Skadden also intends to seek allowance for any incremental fees Skadden may incur in conjunction with this Final Fee Application, including fees related to preparing this Final Fee Application that were not reflected in the Post-Conversion Period invoice as of the date hereof, responding to any objections thereto, and presenting this Final Fee Application to the Court. Skadden will file a supplement in advance of the hearing to consider approval of this Final Fee Application reflecting any such amounts incurred through entry of an order regarding this Final Fee Application.

138.    Other than among Skadden and its affiliated law practices and their members, no agreements or understandings exist between Skadden and any other person or persons for the sharing of compensation received, or to be received, for professional services rendered in or in connection with the Chapter 11 Cases, nor will any such agreements or understandings be made except as permitted pursuant to Bankruptcy Code section 504(b)(1).

## REIMBURSEMENT OF EXPENSES

139.    Consistent with the Firm's policy with respect to its other clients, Skadden is seeking reimbursement for charges and disbursements incurred as out-of-pocket expenses in the rendition of necessary services to the Debtors and their estates. These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, secretary of state and government filing fees, and fees related to hearings.

140.    Complete descriptions of each expense incurred during the First, Second, Third, and Fourth Interim Fee Periods as well as the Post-Conversion Period are attached hereto as

41

Exhibits D, E, F, and G, respectively. Additionally, tables summarizing the expenses for the Final Fee Period are included at the front of this Final Fee Application. Skadden's policies require all attorneys to retain and submit for review receipts and invoices for all disbursements incurred through outside vendors. Skadden maintains all receipts and invoices related to each client's disbursement account in a central storage facility, and these records can be produced upon request.

141.    Skadden seeks (a) interim allowance and approval of $1,410.34 in reimbursement of actual and necessary expenses incurred with regard to services provided during the Third Interim Period, (b) interim allowance and approval of $245.93 in reimbursement of actual and necessary expenses with regard to services provided during the Fourth Interim Fee Period, and (c) final allowance and approval of reimbursement of actual and necessary expenses in the amount of $155,578.59 for the Final Fee Period. As part of this Final Fee Application, Skadden also intends to seek allowance for any incremental expenses Skadden may incur in conjunction with this Final Fee Application, including expenses related to preparing this Final Fee Application that were not reflected in the Post-Conversion Period invoice as of the date hereof, responding to any objections thereto, and presenting this Final Fee Application to the Court. Skadden will file a supplement in advance of the hearing to consider approval of this Final Fee Application reflecting any such amounts incurred through entry of an order regarding this Final Fee Application.

142.    These expenses represent actual and necessary expenses incurred in the rendition of professional services in the Chapter 11 Cases.

## NOTICE

143.    Notice of this Motion will be given to: (a) the U.S. Trustee, (b) counsel to the Prepetition Lenders, (c) counsel to the Creditors' Committee, (d) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors, (e) any party that has requested

notice pursuant to Bankruptcy Rule 2002, and (f) all parties entitled to notice pursuant to Local Bankruptcy Rules 2002-1(b). The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

144.    No previous request for the relief sought herein has been made to this Court or any other court

## CONCLUSION

WHEREFORE, Skadden respectfully requests that this Court enter an order granting (a) interim allowance and approval of compensation for professional services rendered to the Debtors, in the amount of $132,340.00, and reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $1,410.34, for the Third Interim Period, (b) interim allowance and approval of compensation for professional services in the amount of $286,493.50 and reimbursement of actual and necessary expenses in the amount of $245.93 with regard to services Skadden provided as counsel for the Debtors during the Fourth Interim Fee Period, including the Post-Conversion Period, (c) final allowance and approval of $13,116,169.50 in compensation and $155,578.59 in reimbursement of fees with regard to services Skadden provided as counsel for the Debtors throughout the Final Fee Period, (d) permission to apply the $5,000 retainer Skadden is holding with respect to the Debtors to Skadden's outstanding fees and expense reimbursement and to turn over the $5,000 retainer Skadden is holding with respect to a non-Debtor affiliate to such non-Debtor affiliate, and (e) such other and further relief as may be just and proper.


*[Remainder of Page Intentionally Left Blank]*

43

Dated: Wilmington, Delaware
     May 17, 2023

          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

          */s/ Jacqueline M. Dakin*
          Joseph O. Larkin (I.D. No. 4883)
          Carl T. Tullson (I.D. No. 6704)
          Jacqueline M. Dakin (I.D. No. 6650)
          One Rodney Square, 920 N. King Street
          Wilmington, Delaware 19801
          Telephone: (302) 651-3000
          Joseph.Larkin@skadden.com
          Carl.Tullson@skadden.com
          Jacqueline.Dakin@skadden.com

          – and –

          Ron E. Meisler (admitted *pro hac vice*)
          Jennifer Madden (admitted *pro hac vice*)
          155 North Wacker Drive
          Chicago, Illinois 60606-1720
          Telephone: (312) 407-0700
          Ron.Meisler@skadden.com
          Jennifer.Madden@skadden.com

          *Counsel to Debtors and Debtors-in-Possession*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 7** |
| **ARMSTRONG FLOORING, INC.**, *et al.*, | **Case No. 22-10426 (MFW)** |
| **Debtors.**[1] | **(Jointly Administered)** |

### DECLARATION OF RON E. MEISLER

I, Ron E. Meisler, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.    I am a partner of the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**" or the "**Firm**"),[2] which maintains offices for the practice of law at, among other locations, 155 North Wacker Drive, Chicago, Illinois 60606-1720, and 920 North King Street, Wilmington, Delaware 19801. I am admitted in, practicing in, and a member in good standing of the bar of the State of Illinois, and I have been admitted *pro hac vice* to appear before the United States Bankruptcy Court for the District of Delaware in the above-captioned cases.

2.    I have personally performed many of the legal services rendered by Skadden as counsel to the Debtors and am thoroughly familiar with the other worked performed on behalf of the Debtors by the attorneys and other persons in the Firm.

---

[1]    The Debtors in these chapter 7 cases, along with the last four digits of their respective tax identification numbers, are as follows: Armstrong Flooring, Inc. (3305); AFI Licensing LLC (3265); Armstrong Flooring Latin America, Inc. (2943); and Armstrong Flooring Canada Ltd. (N/A). The address of the Debtors' corporate headquarters is PO Box 10068, 1770 Hempstead Road, Lancaster, PA 17065.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Final Fee Application.

1

3.      I have reviewed the foregoing Final Fee Application, and the facts set forth therein are true and correct to the best of my knowledge, information, and belief. Moreover, I have reviewed Local Rule 2016-2 and submit that the Final Fee Application complies with such rule. However, to the extent that the Final Fee Application does not comply in all respects with such rule, I believe that such deviations are not material.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 17, 2023

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP


*/s/ Ron E. Meisler*
Ron E. Meisler
155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411